IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCEP LUSOL HOLDINGS LIMITED )<br>)<br>Plaintiff and Counterclaim defendant, )<br>)<br>v. )<br>PERMATEX, INC. and )<br>ULTRAMOTIVE CORPORATION )<br>)<br>Defendant )<br>)<br>)<br>)<br>) | Civil Action No. –CV-05-141(KAJ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**

**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF**

**U.S. PATENT NO. 6,685,064**

John G. Harris, Esq. (No. 4017)
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Tel. (302) 778-7500
Fax (302) 778-7557

OF COUNSEL:
Lloyd McAulay
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax: (212) 521-5450

## Table of Contents

I. INTRODUCTION ..................................................................................................................1

II. The Parties, The Art, the Patent in Suit and the Accused Devices ......................................3

    A. The Parties and the Status of the Litigation................................................................3

    B. General Description of the Relevant Technology ......................................................4

    C. The Patent in Suit .......................................................................................................5

    D. The Accused Devices .................................................................................................7

    E. Detailed operation of the Accused Products ..............................................................7

III. SUMMARY JUDGMENT STANDARD ............................................................................8

    A. The Two-Step Process for Determining Patent Infringement ....................................9

IV. ARGUMENT.....................................................................................................................11

    A. The Accused Devices Do Not Literally Infringe under the All-Elements Rule.......11

    B. The Accused Devices Do Not Infringe Under the Doctrine of Equivalents ............12

    C. Since Independent Claim 1 is Not Infringed, Neither are Claims Which Depend From It.......................................................................................................................12

    D. Even if Rocep's Claim Construction Is Adopted, There is No Infringement by Defendants, Because Every Asserted Claim of the '064 Patent Would Then be Invalid Under 35 U.S.C. § 102 ....................................................................................13

V. CONCLUSION....................................................................................................................14

CASES

Amgen Inc. v. Hoechst Marion Roussel, 314 F.3d 1313 (Fed.Cir. 2003) .......... 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......... 8, 9

Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251 (Fed.Cir. 1989) .......... 10

Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448 (Fed.Cir.1998) .......... 10

Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532 (3rd Cir.1994) .......... 9

Desper Prods., Inc. v. QSound Labs, Inc., 157 F.3d 1325 (Fed.Cir. 1998) .......... 9

Engel Indus., Inc. v. Lockformer Co., 96 F.3d 1398 (Fed.Cir. 1996) .......... 11

Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1361 (Fed.Cir. 2005) .......... 10

General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978 (Fed.Cir. 1997) .......... 9, 11

Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605 (1950) .......... 10

Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111 (Fed.Cir. 2004) .......... 9

Jeneric/Pentron, Inc. v. Dillon Company, Inc., 205 F. 3d 1377 (Fed.Cir. 2000) .......... 12

Julien v. Zeringuel, 867 F.2d 1569 (Fed.Cir. 1989) .......... 10

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) .......... 9

Mars, Inc. v. H.J. Heinz Co., 377 F.3d 1369 (Fed.Cir. 2004) .......... 9

Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare, 402 F.3d 374 (3d Cir.2005) .......... 9

Perkin Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528 (Fed.Cir. 1987) .......... 11

Richdel, Inc., v. Sunspool Corp., 714 F.2d 1573 (Fed.Cir. 1983) .......... 14

Scanner Technologies Corp. v. Icos Vision Sys. Corp., 365 F.3d 1299 (Fed.Cir. 2004) .......... 10

-ii-

Searfoss v. Pioneer Consolidated Corp., 374 F.3d 1142 (Fed.Cir. 2004) ............ 10

Union Water-Meter Co. v. Desper, 101 U.S. (11 Otto) 332 (1879) ............ 10

Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997) ............ 10, 11, 12

## STATUTES

35 U.S.C. § 102 ............ 3, 13

35 U.S.C. § 112 ............ 3

## RULES

Fed. R. Civ. P. 56(c) ............ 8

## I.     INTRODUCTION

Defantants Permatex, Inc. ("Permatex") and Ultramotive Corporation ("Ultramotive") (collectively, "Defendants") respectfully request this Court to hold that Defendants do not infringe, either literally or under the doctrine of equivalents, any of the three asserted claims (Claims 1, 2 and 6) of United States Patent No. 6,685,064 ("the '064 patent").

In this lawsuit, Plaintiff Rocep Lusol Holdings Limited ("Rocep") contends that certain lever operated dispensing cans manufactured by Ultramotive infringe the '064 patent. Only claims 1, 2 and 6 are asserted. Rocep also contends that Permatex, which buys the finished, filled cans from Ultramotive for retail sales, also infringes the '064 patent, by its retail sales. These infringement contentions are without merit, and this motion requests summary judgment of noninfringement.

Defendants do not infringe any claim of the '064 patent. To infringe a claim of a patent, every element and every limitation, either literally or under the Doctrine of Equivalents, must be present in the accused device. Defendants' propose construction of various claim terms of the '064 patent[1]. Under Defendants' construction, elements of the asserted claims of the '064 patent are not found in Defendants' allegedly infringing devices. Thus, a finding of non-infringement would be proper if the Court were to adopt any one of Defendants' proposed constructions of disputed claim terms.

This motion for summary adjudication, however, focuses on one simple non-infringement issue. In brief, Defendants' accused devices do not meet the following limitation from claim 1:

**"a nozzle assembly sealing engageable with the hinge assembly"**

---

[1] Defendants have proposed constructions of disputed terms of the '064 patent claims in Defendants' Claim Construction Memorandum, submitted herewith.

Accordingly, Defendants' dispensers do not infringe any of the asserted claims.

The requirement that the claims provide notice to the public of the scope of the patentee's exclusivity is the significant policy that calls for the grant of this summary judgment motion. Essentially, the '064 patent claims call for a sealing engagement relation that does not exist in Defendants' dispensers. Defendant and the rest of the public have a right to rely on the claim language so as to comport themselves in a non-infringing manner.

If the no-trespass notice (i.e., the claim) says that a sealing engagement is part of where the public may not go, then the lack of that sealing engagement means a product does not infringe. The entry of summary judgment of non-infringement in favor of Defendants is warranted.

As more fully detailed in Defendants' Claim Construction Memorandum, the claim language at issue is amenable to but a single construction, within the context of the wording of the claims themselves and the patent specification. To infringe the '064 patent, a nozzle assembly of an infringing dispensing apparatus must be able in normal operation to (a) come into contact with a hinge assembly of the apparatus, (b) causing a seal – a tight and perfect closure - to be formed, (c) at the juncture of contact between the nozzle assembly and the hinge assembly. An examination of Defendants' accused device[2] shows that it contains a nozzle assembly and a hinge assembly. But neither on the shelf nor during operation of the accused device do these two elements touch one another, let alone engage in any sort of sealing fashion. Nothing in Defendants' accused devices corresponds to this claim limitation.

Moreover, because nothing in Defendants' accused devices corresponds to this "sealingly engageable" claim limitation, the Doctrine of Equivalents is of no avail to Plaintiff, as it is

---

[2] Provided as Exhibit 1 to the Declaration of Chris Scheindel submitted herewith.

impermissible to employ the Doctrine to eliminate a limitation of a claim in determining infringement.

Since this sealingly engageable limitation is missing from Defendants' accused devices, and since this limitation appears in each of the asserted claims of the '064 patent, Defendants cannot infringe the asserted claims of '064 Patent as a matter of law, either literally or under the Doctrine of Equivalents.

Plaintiff, in its attempts to cast the net of infringement over Defendants, has proposed an interpretation of this claim phrase that is contrary to the plain meaning of the words of the claim and unsupported by the specification of the '064 patent. To adopt Plaintiff's construction would be to countenance an unfair violation of the notice function of patents. However, even if the Court were to adopt Plaintiff's proposed construction, there could still be no infringement by Defendants. As detailed more fully in Defendants' Motion for Invalidity and supporting papers, filed contemporaneously herewith, under such a construction, the asserted claims of the '064 patent would encompass prior art devices and would therefore be invalid as being anticipated under 35 U.S.C. § 102.[3]  An invalid patent claim, of course, cannot be infringed.

## II.  THE PARTIES, THE ART, THE PATENT IN SUIT AND THE ACCUSED DEVICES

### A.  The Parties and the Status of the Litigation

The Plaintiff/Counterclaim Defendant in this matter is Rocep Lusol Holdings Limited ("Rocep"). Rocep is the assignee of U.S. Patent No. 6,685,064 ("the '064 patent"), the patent at issue in this case.

---

[3] Defendants also believe that even under Defendants' proposed construction, the '064 patent is invalid under 35 U.S.C. § 112, for failure of the written description to contain clear concise and exact terms as to enable any person skilled in the relevant to practice the "nozzle assembly sealingly engaged with the hinge assembly" element of the claimed invention. This argument, too, is more fully addressed in Defendants' accompanying Motion for Invalidity.

The Defendants/Counterclaim Plaintiffs are Permatex Inc. ("Permatex") and Ultramotive Corporation ("Ultramotive"). Permatex is a customer of Ultramotive. Since long before the patent in suit issued, Ultramotive has been providing finished pressurized containers of RTV silicone in lever-operated dispensers to Permatex, which sells these products under the "POWERBead" brand in the automotive after-market.

None of the parties are related entities.

Rocep filed suit on March 10, 2005, alleging infringement of claims 1, 2 and 6 of the '064 patent by the POWERBead products made for Permatex by Ultramotive. Defendants answered on August 5, 2005, denying infringement and counterclaiming for noninfringement and invalidity of the '064 patent.

### B.   General Description of the Relevant Technology

The technology at issue in this case involves containers that dispense product. Such dispensing containers are common and well-known; examples include such everyday items as cans for dispensing aerosol spray, whipped cream or shaving cream. These devices typically are composed of a container filled with the desired product, i.e. whipped cream or shaving cream, under pressure of a propellant. The container has a valve through which the product can flow out of the container. When the valve is opened, the product is forced out of the valve opening by the pressure of the propellant.

The valve has a short stem to direct the product as it comes out. Typically, a nozzle is attached to the valve stem, to provide a longer extension and greater control when dispensing the product than that provided by the short valve stem.

To use such a dispenser, the user either presses or tilts the nozzle. Such action causes the valve to open, which allows the product to flow out of the container and through the valve, stem

and nozzle, under pressure of propellant within the container. When the user stops depressing or tilting the nozzle or stem, the valve is returned to a closed state, due to the pressure of the propellant in the container (and the elasticity of the rubber grommet that holds the valve stem in place). While with some dispensers the user can apply his finger directly to the nozzle, other dispensers have a lever mechanism that engages with the nozzle, so that the user only has to press the lever to operate the dispenser and cause product to be released.

### C.    The Patent in Suit

The '064 patent issued on February 3, 2004 and is assigned to Plaintiff. It is directed to the type of dispenser containers described above. In particular, it describes a particular pressurized container for dispensing viscous product material, such as silicone sealants or caulk for tiles.

As discussed in the Summary of the Invention, a dispenser according to the invention of the '064 patent features a can 12[4] filled with product under pressure. ('064 patent, Col. 1, lines 5-8). A valve 14 with a stem 30 is on the top of the can. ('064 patent, Col. 1, line 27 and lines 45-48). The patent identifies that valve as a tilt valve. ('064 patent, Col. 1, lines 45). The valve stem 30 has a thread on the outside to allow a nozzle 20 to screw onto the tilt valve stem. ('064 patent, Col. 5, lines 5-8).

The '064 patent describes using a lever 18 to open the valve. The lever 18 is pivotally attached to a hinge assembly 16 that is fastened to the container. ('064 patent, Col. 1, line 30 and Col. 5, lines 29-33). The user opens the valve by pressing down on the lever which then bears

---

[4] The number "12" and the succeeding component numbers are provided for ease of reference to the Figures provided in the '064 patent.

upon the nozzle. ('064 patent, Col. 6, lines 1-2). Since the nozzle is screwed onto the valve stem, the pressing of the lever against the nozzle also pushes down the valve stem and the valve is opened. ('064 patent, Col. 6, lines 3-4, Col. 3, lines 30-36). The portion of the lever that comes into contact with the nozzle is referred to in the patent as the **bearing portion** of the lever. ('064 patent, Col. 1, lines 33-36). The part of the nozzle that the lever comes into contact with is referred to as the **actuator portion** 90 of the nozzle assembly. ('064 patent, Col. 1, lines 33-36).

The actuator portion of the inventive nozzle assembly has a cam surface, i.e., a surface with at least one "bump" 96 or variation on it. ('064 patent, Col. 1, lines 34-36). By rotating the nozzle, the user can raise or lower the lever, depending on whether or not the lever is in contact with a "bump" of the cam surface. Thus, the cam surface allows the nozzle assembly to have an **open** and a **closed** position. ('064 patent, Col. 1, lines 59-65). If the bearing portion of the lever 18 is on the "bump" 96, then the lever is in a raised position and the lever can be depressed so as to cause the valve to unseal and allow product to be released. (Id.) This would be the "open" position. If the bearing portion is not on the bump, then the lever is not raised and the lever cannot be depressed, so the valve remains in the closed position and the product is not released. This would be the "closed" position of the nozzle assembly. (Id.)

Claim 1 of the '064 patent recites this dispensing apparatus as follows:

> A dispensing apparatus for dispensing a product from a container, said apparatus comprising:
> a container;
> a product chamber within the container;
> a tilt valve adjacent to the product chamber and having a valve stem provided with an external thread;
> a hinge assembly attached to the container;
> a lever hingedly attached to the hinge assembly and comprising a bearing portion; and

a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem,

the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus.

### D.   The Accused Devices

Defendant Ultramotive provides finished pressurized containers with lever-operated dispensing mechanisms to its customer Permatex. Ultramotive obtains the product to be dispensed and uses components it either designs and builds itself or obtains from third parties to make the dispensing containers, and then fills and pressurizes the containers with the desired product. Permatex markets these lever-operated dispensing packs of product under the brand name "POWERBead." The POWERBead products are primarily used in the automotive aftermarket.

Defendant Ultramotive developed these accused dispensing containers on its own, based upon many years of experience in the dispensing container business. The accused dispensing containers employ a combination of proprietary Ultramotive design features with known elements of the prior art that Ultramotive is free to employ. Sales to Permatex of these accused products began in November of 2002. Aside from a single sale to a company called VersaChem in May, 2002, all sales of Ultramotive's accused lever operated dispensing packs have been exclusively to Permatex.

### E.   Detailed operation of the Accused Products

Each of Defendants' accused devices has a "nozzle assembly" and a "hinge assembly" which substantially comport with the way those terms have been employed in claim 1 of the '064 patent. These parts have been respectively labeled as "nozzle" and "hinge" on the sample of Defendants' dispenser provided to the Court. See ¶¶ 3-5 of the Declaration of Christian T.

Scheindel in Support of Defendants' Motion for Summary Judgment of Non-Infringement ("the Scheindel Declaration") filed herewith. Defendants' accused devices also include a lever pivotally attached to the hinge assembly, which has also been labeled as "lever." See ¶ 6 of the Scheindel Declaration.

The nozzle assembly and hinge assembly of Defendants' accused devices remain separate components that are never preassembled together to form a nozzle/hinge subassembly. See ¶ 7 of the Scheindel Declaration.

In normal operation of Defendants' accused products, the nozzle assembly is unscrewed up the stem of the valve to the desired height. See ¶ 8 of the Scheindel Declaration. The user then grips the lever, which pushes down on the nozzle, which in turn correspondingly pushes down on the valve stem to which it is attached, thus opening the valve to release the contents of the container. See ¶ 9 of the Scheindel Declaration. At no time during this operation does the nozzle assembly ever come into contact with the hinge assembly. See ¶ 10 of the Scheindel Declaration. It is the lever, and not the hinge assembly, which contacts the nozzle assembly. See ¶ 6 of the Scheindel Declaration. Even if the nozzle assembly is screwed down completely, it never touches the hinges assembly. See ¶ 11 of the Scheindel Declaration. Indeed, any such contact is physically impossible during use of Defendants' accused products. See ¶ 12 of the Scheindel Declaration.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in a light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once submitted, a properly supported motion for summary judgment should be granted unless the non-moving party

provides admissible evidence containing "specific facts showing that there is a genuine issue for trial." Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare, 402 F.3d 374, 379 (3d Cir.2005). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial," Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 537 (3rd Cir.1994) (citing Celotex, 477 U.S. at 322.)

These traditional standards for granting of summary judgment apply in patent cases. Desper Prods., Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1332 (Fed. Cir. 1998). If no reasonable jury could find, either literally or under the doctrine of equivalents, that each and every limitation recited in the properly construed claims exists within the accused device or method, a grant of summary judgment of non-infringement is appropriate. Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citations omitted).

Where, as here, the parties do not dispute any relevant facts regarding the accused product, but merely disagree over possible claim interpretations, the question of literal infringement collapses into one of claim construction and is amenable to summary judgment. General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed.Cir.1997).

### A.   The Two-Step Process for Determining Patent Infringement

Determination of patent infringement includes a two-step analysis: (1) the scope of the claims first must be construed; and (2) the allegedly infringing device must be compared to the properly construed claims. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); see also Mars, Inc. v. H.J. Heinz Co., 377 F.3d 1369, 1373 (Fed. Cir. 2004). The first step, claim construction, involves "determining the meaning and scope of the patent claims asserted to be infringed." Markman, 52 F.3d at 976. The second step, comparison of the claims to the accused device, requires a determination that

each and every claim limitation or its equivalent be found in the accused device or method. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998). This is known as the "all-elements" rule. Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1361 (Fed. Cir. 2005).

The essential inquiry for determination of infringement is: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" Warner-Jenkinson, 520 U.S. at 40. If a claim limitation or its substantial equivalent is not present, there can be no infringement. Julien v. Zeringuel, 867 F.2d 1569, 1571 (Fed. Cir. 1989). If even a single element of a claim is missing in the accused product or method, there is no literal infringement, as a matter of law. Searfoss v. Pioneer Consolidated Corp., 374 F.3d 1142, 1148 (Fed. Cir. 2004); Scanner Technologies Corp. v. Icos Vision Sys. Corp., 365 F.3d 1299, 1302 (Fed. Cir. 2004); Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1259 (Fed. Cir. 1989).

If there is no literal infringement, an accused product or method may still be found to infringe in certain circumstances under the judicially created "doctrine of equivalents." See Union Water-Meter Co. v. Desper, 101 U.S. (11 Otto) 332, 335 (1879). The traditional test to determine whether an element in an accused product or method is an equivalent to a claim element is proof that the element in the accused device performs "substantially the same function in substantially the same way to achieve substantially the same result" as the element in the claim. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607 (1950).

However, the mere fact that "a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where [the accused product or method] performs

the function and achieves the result in a substantially different way." Perkin Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1531 n. 6 (Fed. Cir. 1987). "If the accused device performs a substantially different function *or* performs in a substantially different way *or* obtains a substantially different result, it does not infringe under the doctrine of equivalents." Engel Indus., Inc. v. Lockformer Co., 96 F.3d 1398, 1407 (Fed. Cir. 1996).

In another formulation of the test for equivalence, the Supreme Court has noted that an accused device is not equivalent if it is "substantially different" from the elements claimed in the patent. See Warner-Jenkinson, 520 U.S. at 40. It is important, however, to ensure that the application of the Doctrine of Equivalents, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety. Id. at 29.

Defendants respectfully submit that, applying these standards to the undisputed material facts of this case, the Court should find that no genuine issues of material fact exist and that Defendants do not infringe any asserted claim of the '064 Patent as a matter of law.

## IV. ARGUMENT

The accused product does not literally infringe the '064 patent, because the requirements of this "all-elements" rule are not met. As described above, in the accused devices, the nozzle assembly is not engageable with the hinge assembly, let alone sealingly engageable, as required by all of the asserted claims of the '064 patent.

### A. The Accused Devices Do Not Literally Infringe under the All-Elements Rule

The claim term "nozzle assembly sealingly engageable with the hinge assembly" requires that (1) there be direct physical contact between the nozzle assembly and the hinge assembly, (2) that such contact causes a seal to be formed; and (3) the seal is formed at the juncture of contact so as to prevent leakage between the nozzle assembly and the hinge assembly. See Defendants'

Memorandum In Support Of Defendants' Proposed Construction of Disputed Claim Terms submitted concurrently with this motion. As the arguments in support of this claim construction are fully detailed in that motion, they will not be repeated here. However, if this Court construes this "sealingly engageable" relation to require either (1), (2) or (3) cited above, then this Court must also find that claim 1 is not infringed by Defendants' dispensers.

There is no dispute that in Defendants' accused devices, the nozzle assembly does not ever contact the hinge assembly. See ¶¶ 9-11 of the Scheindel Declaration. Without such contact, requirement (1) described above is not met. Without such contact, there can be no seal, and surely no seal between the nozzle assembly and the hinge assembly. Thus, Defendant's accused devices fail to meet requirements (2) and (3) as well, and claim 1 of the '064 patent cannot be infringed by the accused devices.

**B.     The Accused Devices Do Not Infringe Under the Doctrine of Equivalents**

Because there is no possibility of engagement of the nozzle with the hinge assembly in the operation of Defendants' accused devices, much less any sealing engagement, there can be no infringement under the Doctrine of Equivalents. To find otherwise would be to employ the Doctrine to entirely eliminate a limitation of a claim in determining infringement, which is impermissible. Warner-Jenkinson, 520 U.S. at 29 (1997).

**C.     Since Independent Claim 1 is Not Infringed, Neither are Claims Which Depend From It**

Independent claim 1 of the '064 patent and dependent claims 2 and 6, which depend from claim 1, have been asserted in this case. Dependent claims, by definition, must incorporate every element and limitation of the independent claim upon which they depend. Jeneric/Pentron, Inc. v. Dillon Company, Inc., 205 F. 3d 1377, 1383 (Fed. Cir. 2000). If an accused product does not literally infringe an independent claim, it cannot infringe the dependent claims that depend upon

the non-infringed independent claim. See Amgen Inc. v. Hoechst Marion Roussel, 314 F.3d 1313, 1346 (Fed. Cir. 2003). As shown above, Defendants' accused devices do not infringe claim 1, because there is no possibility of any sealing engagement relation between the nozzle assembly and the hinge assembly. Since by definition, limitations of independent claims are incorporated into claims which depend from them, this limitation of independent claim 1 is by definition incorporated into asserted claims 2 and 6, which depend from claim 1. Therefore, by law these dependent claims cannot be infringed by the accused device.

> **D.  Even if Rocep's Claim Construction Is Adopted, There is No Infringement by Defendants, Because Every Asserted Claim of the '064 Patent Would Then be Invalid Under 35 U.S.C. § 102**

If the words "nozzle assembly sealingly engageable with the hinge assembly," chosen specifically by the patentee in claiming the invention of the '064 Patent, are properly given their plain and ordinary meaning within the context of the patent, then none of the asserted claims are infringed by Defendants' accused devices. To avoid this inescapable conclusion of non-infringement, Plaintiff Rocep proffers a construction of the asserted claims that is antithetical to their ordinary meaning. As discussed more fully in Defendants' Claim Construction Memorandum, adoption of Plaintiff Rocep's construction would undermine the notice function of patents, would be contrary to the plain meaning of the terms, and would violate the canons of claim construction. In the event that the Court adopts Rocep's construction, however, Defendants seek summary judgment of invalidity of the asserted claims of the '064 Patent.[5] This is because adoption of Plaintiff's proposed construction of the "sealingly engageable" element would also cause the asserted claims to read on (i.e., to be "anticipated" by) a variety of prior art references, including at least one prior art PCT patent application publication. This

---

[5] See Defendants' Motion for Summary Judgment of Invalidity and supporting papers, filed concurrently herewith, for a detailed argument of this issue.

-14-

renders at least all of the asserted claims of the '064 invalid, and an invalid claim can not be infringed. Richdel, Inc., v. Sunspool Corp., 714 F.2d 1573, 1580 (Fed.Cir.1983).

## V. CONCLUSION

This patent infringement suit should never have been filed. Defendants' accused products do not infringe the asserted claims of patent in suit under any proper construction of the claim phrase "nozzle assembly sealingly engageable with the hinge assembly." There are no facts in dispute, so this issue is ripe for summary adjudication. Based on the foregoing, Defendants are entitled to summary judgment of non-infringement of each of the asserted claims of the '064 Patent, and respectfully request entry of the same from this Court.

Date: June 30, 2006          By:   /s/ John G. Harris
                                   John G. Harris, Esq. (No. 4017)
                                   Reed Smith LLP
                                   1201 Market Street, Suite 1500
                                   Wilmington, DE 19801
                                   Tel. (302) 778-7500
                                   Fax (302) 778-7557

OF COUNSEL:
Lloyd McAulay
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax: (212) 521-5450