IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCEP LUSOL HOLDINGS LIMITED    ) | |
| ) | |
| Plaintiff and Counterclaim defendant,    ) | |
| ) | |
| v.    ) | Civil Action No. –CV-05-141(KAJ) |
| PERMATEX, INC. and    ) | |
| ULTRAMOTIVE CORPORATION    ) | |
| ) | |
| Defendant    ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**

**FOR SUMMARY JUDGMENT OF**

**INVALIDITY OF U.S. PATENT NO. 6,685,064**

John G. Harris, Esq. (No. 4017)
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Tel. (302) 778-7500
Fax (302) 778-7557

OF COUNSEL:
Lloyd McAulay
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax: (212) 521-5450

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  Factual Background ............................................................................................2

     A.  The Parties and the Status of the Litigation.............................................2

     B.  General Description of the Relevant Technology ......................................3

     C.  The '064 Patent.........................................................................................4

     D.  The Prior Art Reference ............................................................................6

III. LEGAL STANDARDS ..........................................................................................7

     A.  The Legal Standards for Summary Judgment ...........................................7

     B.  Patent Invalidity May be Determined by Summary Judgment ..................8

     C.  Qualifying Prior Art Under 35 U.S.C. § 102b.........................................8

     D.  Legal Standard for Invalidity under 35 U.S.C. § 102b.............................9

     E.  Legal Standards for Invalidity under 35 U.S.C. § 112 .............................9

IV.  ARGUMENT.......................................................................................................11

     A.  The Asserted Claims of the '064 Patent are Anticipated by the '951 Under the
         Construction Proposed by Plaintiffs ......................................................11

         1.  The Prior Art Reference Qualifies as Prior Art to the '064 Patent.............12

         2.  The Prior Art Reference Teaches Every Element and Limitation of Claim 1 .........12

         3.  The Prior Art Reference Teaches Every Element and Limitation of Claim 2
             from the patent in suit......................................................................20

         4.  The Prior Art Reference Teaches Every Element and Limitation of Claim 6 .........21

     B.  The Asserted Claims are Invalid under 35 U.S.C. § 112 Under Defendants'
         Proposed Constructions ..........................................................................22

V.   CONCLUSION....................................................................................................24

## CASES

Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc., 344 F.3d
    1186 (Fed. Cir. 2003)......................................................................................... 9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................ 7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................ 7

Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532 (3rd Cir.1994) ...... 7

Genentech Inc. v. Nordisk A/S, 108 F.3d 1361 (Fed. Cir. 1997) ................................. 24

In re Vaeck, 947 F.2d 488 (Fed. Cir. 1991).............................................................. 11

In re Wands, 858 F.2d 731 (Fed. Cir. 1988) ............................................................. 10

Lacks Industries Inc. v. McKechnie Vehicle Components USA Inc., 322
    F3d 1335 (Fed. Cir. 2003).............................................................................. 9

Lear Siegler, Inc. v. Aeroquip Corp., 733 F.2d 881 (Fed. Cir. 1984)............................ 8

Lockwood v. American Airlines, Inc., 107 F.3d 1565 (Fed. Cir. 1997)................... 8, 24

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986) ............ 8

Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH, 139 F.3d 877
    (Fed. Cir. 1998)............................................................................................. 9

Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare, 402 F.3d 374 (3d Cir.2005) ............... 7

Perricone v. Medicis Pharm. Corp., 432 F.3d 1368 (Fed.Cir.2005)........................ 9, 11

Reiffin v. Microsoft Corp., 214 F.3d 1342 (Fed Cir. 2000) ........................................ 10

Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714 (Fed. Cir. 1991).................................... 8

United States Gypsum Co. v. National Gypsum Co., 74 F.3d 1209 (Fed. Cir. 1996)..................... 8

United States v. Telectronics, Inc., 857 F.2d 778 (Fed. Cir. 1988) ............................. 10

## STATUTES

35 U.S.C. § 102.................................................................................................... 8, 9

35 U.S. C. §112.................................................................................................... 1, 2

35 U.S.C. § 119(a) ........................................................................................... 8, 9, 12

35 U.S.C. § 282.................................................................................................... 9

## RULES

Fed. R. Civ. P. 56(c) ............................................................................................. 7

Defendants Permatex, Inc. and Ultramotive Corporation (collectively, "Defendants") respectfully request this Court to hold that the three asserted claims (Claims 1, 2 and 6) of United States Patent No. 6,685,064 ("the '064 patent" or "the patent in suit") are invalid, either (1) as being anticipated under 35 U.S.C. § 102(b) or (2) for failure to meet the requirements of 35 U.S. C. §112, depending upon whether this Court adopts: (1) Plaintiff's proposed constructions; or (2) Defendants' proposed constructions, respectively. Both parties have filed their respective claim construction briefs along with the submission of this motion, each offering differing constructions for the disputed claim terms.

## I.     INTRODUCTION

This is a lawsuit that never should have been filed. Plaintiff Rocep Lusol Holdings Limited ("Rocep") has wrongly asserted a defective patent in their attempt to bully their way into a market in which they were unable to compete fairly.

In order to claim infringement and avoid the invalidation of the patent, Plaintiff has had to advance a contorted reading of the claim language. However, that contorted reading causes the asserted claims of the '064 patent to be fully anticipated by prior art, rendering those claims invalid. In particular, if Plaintiff's other proffered constructions are adopted by the Court, under Plaintiff's proposed construction of the claim phrase "nozzle assembly sealingly engageable with the hinge assembly," the asserted claims would be anticipated by at least PCT Publication No. WO 99/18010.

Defendants, conversely, have proposed what they believe to be the proper constructions of the disputed terms, and the only viable construction for the "sealingly engaged" claim phrase. The support for these constructions is discussed more fully in

-1-

Defendants' Claim Construction Brief, filed contemporaneously herewith. However, even under Defendants' proposed construction, the asserted claims should be held to be invalid for the failure of the specification to meet the requirement of the first paragraph of Section 112. This is because the patent fails to teach or convey how or why, in the inventive apparatus of the patent in suit, the nozzle assembly is sealingly engageable with the hinge assembly - or indeed to say anything about the relation of these components other than to parrot the exact words of the claim. The written description provided in the specification of the '064 patent is simply insufficient to enable the practice of the asserted claims, even under Defendants' proper proposed construction, as required under the Patent Statute, mandating a finding of invalidity.

Thus, in its attempt to over-reach, Plaintiff has created the dilemma it now faces. If the Court adopts Plaintiff's proposed claim constructions, then the patent in suit is invalid, because it reads on the prior art. If the Court adopts Defendants' claim constructions, then the patent in suit is also invalid, because its disclosure is inadequate to support its claims.

## II.     FACTUAL BACKGROUND

### A.     The Parties and the Status of the Litigation

The Plaintiff/Counterclaim Defendant in this matter is Rocep Lusol Holdings Limited ("Rocep"). Rocep is the assignee of U.S. Patent No. 6,685,064 ("the '064 patent"), the patent at issue in this case. See Exhibit 1 to the Declaration of Stephen Chin ("the Chin Declaration") filed concurrently herewith.

The Defendants/Counterclaim Plaintiffs are Permatex Inc. ("Permatex") and Ultramotive Corporation ("Ultramotive"). Permatex is a customer of Ultramotive.

Ultramotive provides finished pressurized containers of RTV silicone in lever-operated dispensers to Permatex. Permatex then sells this product under the "POWERBead" brand in the automotive after-market.

None of the parties are related entities.

Rocep filed suit on March 10, 2005, alleging infringement of claims 1, 2 and 6 of the '064 patent by the POWERBead dispensers made for Permatex by Ultramotive. Defendants answered on August 5, 2005, denying infringement and counterclaiming for non-infringement and invalidity of the '064 patent.

**B.     General Description of the Relevant Technology**

The technology at issue in this case involves containers that dispense a product. Such dispensing containers are common and well-known; examples include such everyday items as cans for dispensing aerosol spray, whipped cream or shaving cream. Normally, the container has a valve through which the product can flow out of the container. The container is pressurized, so that when the valve is opened, the product is forced out of the valve opening.

The valve has a short stem to direct the product as it comes out. Typically, there is a nozzle that attaches to the valve stem, to provide a longer extension and greater control when dispensing the product than that provided by the short stem of the valve.

To use such a dispenser, the user either presses or tilts the nozzle. Such action causes the valve to open, which allows the product to flow out of the container and through the valve, stem and nozzle, under pressure of propellant within the container. When the user stops depressing or tilting the nozzle, the valve is returned to a closed

state, due to the pressure of the propellant in the container (and the elasticity of the rubber

grommet that holds the valve stem in place).  While with some dispensers the user can

apply his finger directly to the nozzle, other dispensers have a lever mechanism that

engages with the nozzle, so that the user only has to press the lever to operate the

dispenser and cause product to be released

**C.     The '064 Patent**

The '064 patent issued on February 3, 2004 and is assigned to Plaintiff.  It is

directed to the type of dispenser containers described above.  In particular, it describes a

particular pressurized container for dispensing viscous product material, such as silicone

sealants or caulk for tiles.

As discussed in the Summary of the Invention, a dispenser according to the

invention of the '064 patent features a can 12[1] filled with product under pressure.  ('064

patent, Col. 1, lines 5-8).  A valve 14 with a stem 30 is on the top of the can.  ('064

patent, Col. 1, line 27 and lines 45-48).  The patent identifies that valve as a tilt valve.

('064 patent, Col. 1, lines 45).  The valve stem 30 has a thread on the outside to allow a

nozzle 20 to screw onto the tilt valve stem.  ('064 patent, Col. 5, lines 5-8).

The '064 patent describes using a lever 18 to open the valve.  The lever is

attached to a hinge assembly 16 that is attached to the container.  ('064 patent, Col. 1,

line 30 and Col. 5, lines 29-33).  The user opens the valve by pressing down on the lever

whch then bears upon the nozzle.  ('064 patent, Col. 6, lines 1-2).  Since the nozzle is

screwed onto the valve stem, the pressing of the lever against the nozzle also pushes

---

[1] The number "12" and the succeeding component numbers are provided for ease of reference to the
    Figures provided in the '064 patent.

down the valve stem and the valve is opened. ('064 patent, Col. 6, lines 3-4, Col. 3, lines 30-36). The portion of the lever that comes into contact with the nozzle is referred to in the patent as the **bearing portion** of the lever. ('064 patent, Col. 1, lines 33-36). The part of the nozzle that the lever comes into contact with is referred to as the **actuator portion** 90 of the nozzle assembly. ('064 patent, Col. 1, lines 33-36).

The actuator portion of the inventive nozzle assembly has a cam surface, i.e., a surface with at least one "bump" 96 or variation on it. ('064 patent, Col. 1, lines 34-36). By rotating the nozzle, the user can raise or lower the lever, depending on whether or not the lever is in contact with a "bump" of the cam surface. Thus, the cam surface allows the nozzle assembly to have an **open** and a **closed** position. ('064 patent, Col. 1, lines 59-65). If the bearing portion of the lever 18 is on the "bump" 96, then the lever is in a raised position and the lever can be depressed so as to cause the valve to unseal and allow product to be released. (Id.) This would be the "open" position. If the bearing portion is not on the bump, then the lever is not raised and the lever cannot be depressed, so the valve remains in the closed position and the product is not released. This would be the "closed" position of the nozzle assembly. (Id.)

Claim 1 of the '064 patent recites this dispensing apparatus as follows:

> A dispensing apparatus for dispensing a product from a container, said apparatus comprising:
> a container;
> a product chamber within the container;
> a tilt valve adjacent to the product chamber and having a valve stem provided with an external thread;
> a hinge assembly attached to the container;
> a lever hingedly attached to the hinge assembly and comprising a bearing portion; and

a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem,

the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus.

**D.    The Prior Art Reference**

PCT Application No. PCT/GB98/03003 (International Publication Number WO 99/18010)(hereinafter, the "Prior Art Reference") was published on April 15, 1999.[2] Like the patent in suit, it teaches an apparatus for dispensing product, particularly a viscous product such as a sealant, from a container under pressure of a propellant (page 1, lines 3-6). See the Prior Art Reference, PCT Application No. PCT/GB98/03003, published April 15, 1999 under International Publication No. WP 99/18010, attached as Exhibit 2 to the Chin Declaration.[3] The apparatus features a container with a tilt valve attached to it (page 21, lines 19-21). The valve is operated by means of an actuator (which is attached to the nozzle) and a lever (page 3, 3, lines 11-12; page 15, lines 23-33). The actuator is said to cooperate with the lever by means of a screw thread arrangement. (page 3, lines 16-17). The actuator portion is threaded to the valve portion, (the valve stem)( page 11, lines 30-33), such that turning the actuator relative to the valve

_____

[2] This application is an application filed by the same inventor of the '064 patent. However, there is no legal relationship between these patents other than common ownership, so one can constitute prior art to the other.

[3] U.S. Patent No. 6,321,951, also assigned to Plaintiff, shares an identical disclosure with the Prior Art Reference. This is because the '951 patent resulted from the U.S. national phase patent application under the Patent Cooperation Treaty ("PCT") of the same basic underlying application as The Prior Art Reference.

stem and lever varies the rate of flow of product out of the apparatus. (page 3, lines 17-19). Turning the actuator lifts the lever on its hinge, such that the more the lever is lifted, the greater the rate of flow of product. (page 17, lines 13-18).

### III.    LEGAL STANDARDS

#### A.    The Legal Standards for Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in a light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is no genuine issue of material fact if the evidence is such that no reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once submitted, a properly supported motion for summary judgment should be granted unless the non-moving party provides admissible evidence containing "specific facts showing that there is a genuine issue for trial." Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare, 402 F.3d 374, 379 (3d Cir.2005). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial," Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 537 (3rd Cir.1994) (citing Celotex, 477 U.S. at 322.)

The non-moving party has the burden of presenting affirmative evidence to defeat a properly supported motion for summary judgment, see Anderson, 477 U.S. at 248, a

burden that cannot be met merely by "show[ing] that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

### B.    Patent Invalidity May be Determined by Summary Judgment

The invalidity of a patent, like any other patent issue, may be determined on summary judgment. See, e.g., <u>Ryko Mfg. Co. v. Nu-Star, Inc.</u>, 950 F.2d 714, 716 (Fed. Cir. 1991). To establish a prima facie case of invalidity under §§ 102 or 112, the moving party must present clear and convincing evidence of invalidity. <u>Lear Siegler, Inc. v. Aeroquip Corp.</u>, 733 F.2d 881, 885 (Fed. Cir. 1984); see also <u>United States Gypsum Co. v. National Gypsum Co.</u>, 74 F.3d 1209, 1212 (Fed. Cir. 1996). If the non-moving party fails to rebut this showing by raising a genuine issue of material fact, the moving party is entitled to a summary judgment of invalidity. <u>Lockwood v. American Airlines, Inc.</u>, 107 F.3d 1565, 1569 (Fed. Cir. 1997).

### C.    Qualifying Prior Art Under 35 U.S.C. § 102b

The relevant portions of 35 U.S.C. §102b states that a person shall not be entitled to a patent if the invention was "described in a printed publication in this or a foreign country … more than one year prior to the date of the application for patent in the United States." While U.S. patent applications can claim a priority to a foreign patent application, that claim to priority does not constitute an application for patent in the United States. 35 U.S.C. § 119(a) states, in part, that

> "…but no patent shall be granted on any application for patent for an invention which had been patented or described in a printed publication in any country more than one year before the date of the **actual** filing of the application in this country…" (emphasis added)

See 35 U.S.C. § 119(a). Thus, any printed publication that is published more than one year prior to the actual filing date of a United States application regardless of any claim to priority would constitute prior art under 102b. In addition, prior works by the same inventor can be prior art references. <u>Lacks Industries Inc. v. McKechnie Vehicle Components USA Inc.</u>, 322 F3d 1335 (Fed. Cir. 2003).

### D.    Legal Standard for Invalidity under 35 U.S.C. § 102b

Each claim of a patent for any new and novel invention enjoys a statutory presumption of validity. 35 U.S.C. § 282. However, the presumption of validity is not absolute and can be rebutted by showing facts that establish invalidity by clear and convincing evidence. <u>Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH</u>, 139 F.3d 877, 881 (Fed. Cir. 1998).

An analysis of invalidity involves two-steps: first, the court determines the scope and meaning of the asserted patent claims to determine the subject matter for which patent protection is sought; and second, the properly construed claims are compared with the prior art to determine whether the limitations of the claims as properly interpreted are met by the prior art. <u>Akamai Techs., Inc. v. Cable & Wireless Internet Servs.</u>, Inc., 344 F.3d 1186, 1192 (Fed. Cir. 2003). A claim is invalid by reason of anticipation under Section 102 of the Patent Statute if each limitation of a claim is found in a single reference, either expressly or inherently. Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1369 (Fed.Cir.2005)..

### E.    Legal Standards for Invalidity under 35 U.S.C. § 112

The first paragraph of 35 U.S.C. § 112 sets forth the requirement in patents that

> "[t]he specification shall contain a written description of the invention,
> and of the manner and process of making and using it, in such full, clear,
> concise, and exact terms as to enable any person skilled in the art to which
> it pertains, or with which it is most nearly connected, to make and use the
> same…"

35 U.S.C. § 112, ¶ 1.  This statutory provision establishes two separate requirements that

the specification and claims of a patent must satisfy:  (1) the written description

requirement and (2) the enablement requirement.

This written description requirement compels patentees to demarcate the

boundaries of their claimed monopoly by providing an adequate written description of

their invention in the specification portion of the patent.  The "specification must teach

the invention by describing it."  Univ. of Rochester, 358 F.3d at 926 (Fed. Cir. 2004).  It

must "convey with reasonable clarity to those skilled in the art that, as of the filing date

sought, he or she was in possession of the invention."  Vas-Cath, 935 F.2d at 1563-64.

The requirement for a written description of the invention, therefore, ensures that "the

scope of the right to exclude, as set forth in the claims, does not overreach the scope of

the inventor's contribution to the field of art as described in the patent specification."

Reiffin v. Microsoft Corp., 214 F.3d 1342, 1345 (Fed Cir. 2000); see also Vas-Cath, 935

F.2d at 1561.

The enablement requirement requires that the inventor describe the invention in

sufficient detail that one of ordinary skill in the art can practice the claimed invention

without undue experimentation.  In re Wands, 858 F.2d 731, 737 (Fed. Cir. 1988) (Fed.

Cir. 1988).  See also United States v. Telectronics, Inc., 857 F.2d 778, 785, (Fed. Cir.

1988) ("The test of enablement is whether one reasonably skilled in the art could make or

use the invention from the disclosures in the patent coupled with information known in

the art without undue experimentation."). Determining enablement is a question of law based on underlying factual findings. In re Vaeck, 947 F.2d 488, 495 (Fed. Cir. 1991).

## IV.    ARGUMENT

Both parties have simultaneously filed their respective construction briefs, each offering differing constructions for the disputed claim terms. The particular claim language at the crux of this motion is the claim limitation "nozzle assembly sealingly engageable with the hinge assembly."

If the Court adopts Plaintiff's proffered construction of this claim limitation, then the asserted claims will be invalid because they merely describe what was already known and disclosed in the prior art.

If the Court agrees with Defendants' proposed claim interpretation for this claim term, then the asserted claims are likewise invalid, because this claim limitation is not described sufficiently in the specification.

### A.    The Asserted Claims of the '064 Patent are Anticipated by the '951 Under the Construction Proposed by Plaintiffs

A comparison of the disclosure of the Prior Art Reference with the claims of the patent in suit as interpreted by Plaintiff leads to the singular conclusion that Claims 1, 2 and 6 are anticipated and therefore invalid. A patent claims is "anticipated" when each element and limitation is taught or disclosed, literally or inherently, in a single prior art reference, thereby failing to meet the novelty requirement of the patent grant. Perricone, 432 F.3d at 1369 (Fed.Cir.2005).

Claim 1 of the '064 patent, the only independent claim of the patent in suit, reads as follows:

A dispensing apparatus for dispensing a product from a container, said apparatus comprising:

a container;

a product chamber within the container;

a tilt valve adjacent to the product chamber and having a valve stem provided with an external thread;

a hinge assembly attached to the container;

a lever hingedly attached to the hinge assembly and comprising a bearing portion; and

a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem,

the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus.

### 1.    The Prior Art Reference Qualifies as Prior Art to the '064 Patent

The Prior Art Reference was published on April 15, 1999.  See Chin Exhibit 2, first page.  The date of the effective U.S. filing of the '064 patent is December 20, 2000.  See Chin Exhibit 1, first page.  Since the December 20, 2000 date is more than one year later than the publication date of the Prior Art Reference, the Prior Art Reference qualifies as prior art under 35 U.S.C. § 102(b) and §119a.

### 2.    The Prior Art Reference Teaches Every Element and Limitation of Claim 1

The Prior Art Reference discloses each and every element and limitation of claim 1 of the '064 patent in suit, as is shown below, element by element.

a.    The container and the product chamber

The first two claim elements of the '064 patent recite (1) a container and (2) a product chamber respectively.  The only additional limitation to these elements recited by claim 1 is that the product chamber must be within the container.

The disclosure of the Prior Art Reference contains reference to both of these elements in many places in the specification.  For example, Fig. 1 depicts both the container 102 and shows the product chamber 160 within the container.  In addition, on page 2, lines 29-35, the Prior Art Reference clearly discloses a "container" and "a product chamber within the container."

b.    Tilt Valve

The third '064 claim 1 element is the tilt valve.  The applicable claim language is recited as follows:

> a tilt valve adjacent to the product chamber and having a valve stem
> provided with an external thread;

Thus, in order for there to be anticipation, the three limitations that must be disclosed in the Prior Art Reference are that (1) the valve is a tilt valve; (2) the tilt valve must be adjacent to the product chamber; and (3) the tilt valve has an external thread on its stem.  The specification of the Prior Art Reference discloses all of these claim limitations.

First, on page 21, lines 19-21, the Prior Art Reference cites an example where "a standard aerosol valve such as a spray valve or **tilt valve** (for dispensing cream, etc) may be fitted."  Second, on page 2, lines 33-34 the Prior Art Reference states that the "valve [is] adjacent to the product chamber.  Third, on page 10, lines 24-26, the Prior Art Reference describes that the valve portion (i.e., stem) is a hollow cylindrical tube with a

screw thread on its exterior surface.  Thus, each feature of the claimed tilt valve is disclosed in the Prior Art Reference.

          c.      Hinge assembly

The fourth element of claim 1 of the '064 patent is the hinge assembly.  The only additional claim limitation imposed by the claim term is that the hinge assembly must be attached to the container.  The specification of the Prior Art Reference discloses such a hinge assembly.

The hinge assembly is best seen in Fig. 5 of the Prior Art Reference, as part of the lever cap.  On page 15, lines 30-31, the Prior Art Reference describes the lever cap as being composed of a handle and a base.  The base, therefore, corresponds to the hinge assembly.  It further indicates that the handle is attached to the base by a butterfly hinge 170 on page 15, lines 31-33.  On page 15, lines 23-28, the Prior Art Reference describes how the lever cap is attached to the container by snappers 164.  Thus each feature of the claimed hinge assembly is disclosed in the Prior Art Reference.

          d.      Lever

The fifth '064 claim 1 element is the lever.  Additional claim language requires that the lever is hingedly attached to the hinge assembly and has a bearing portion.  The specification of the '064 patent makes it clear that the bearing portion is the part of the lever that will press down upon the nozzle assembly.  See '064 patent, Col. 1, lines 30-31 and lines 58-65.  Thus, for anticipation, the three features of this element that must be described in the Prior Art Reference are (1) a lever, (2) that is attached to the hinge assembly and (3) that has a portion that will contact the nozzle assembly.  The Prior Art Reference discloses each of these features.

First, as shown in Fig. 5 and described on page 15, lies 30-36, the Prior Art Reference describes a lever (sometimes called a handle 166). Second, Fig. 5 and the description on page 15, lines 31-33 describe the attachment of the handle 166 to the hinge assembly. Third, in Fig. 5 and on page 16, lines 24-27, the Prior Art Reference describes how the "lever handle 166 rests on a flange 182 provided around the bottom of the actuator 108. An actuating knuckle 184 on the handle 166 contacts the flange 182." Thus the actuating knuckle 184 corresponds to the lever bearing portion. As the actuator 108 is part of the nozzle assembly, the required relationship to constitute the bearing portion of the lever is satisfied. Thus, each required limitation is disclosed in the Prior Art Reference.

### e.    Nozzle assembly

The last claim 1 element is the nozzle assembly. The pertinent claim language that further describes the nozzle assembly is as follows:

> a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem,
>
> the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus.

Parsing out the claim language, in order for the Prior Art Reference to invalidate the patent in suit, the nozzle assembly disclosed in the Prior Art Reference must disclose the following features:

> (1) it must be sealingly engageable with the hinge assembly;
> (2) it must have an internal thread engaged with the external thread of the valve stem;
> (3) it must be rotatable relative to the hinge assembly and the lever;

(4) it must be rotatable between open and closed positions of the nozzle assembly;

(5) it must have an actuator portion;

(6) the actuator portion must have a surface that cooperates with the lever bearing portion

(7) the cooperation between the lever and actuator is such that operation of the of the lever causes movement of the actuator portion

(8) movement of the actuator portion opens the valve and permits flow of the product out of the apparatus; and

(9) the movement of the actuator occurs when the nozzle is in the open position.

Each of these features is disclosed in the Prior Art Reference. In the Prior Art Reference, the nozzle assembly is the combination of the nozzle 174 and the actuator 108, when they are screwed together. See page 16, lines 9-11 of the Prior Art Reference.

All of the other requirements of this claim element are met as well, as shown below:

<blockquote>
(1)    The nozzle assembly must be sealingly engageable with the hinge assembly
</blockquote>

According to the construction proposed by Plaintiff, this requirement refers to the "nozzle assembly being configured such that the closing of the valve causes the nozzle to engage with the hinge assembly through the lever to seal the valve." Plaintiff supports this interpretation by pointing to col. 5, line 58- col. 6, line 11 of the '064 patent. See Joint Claim Construction Chart attached as Exhibit 6 to the Chin Declaration.

The Prior Art Reference contains a disclosure that is almost identical to the supporting disclosure cited by Plaintiff from the '064 patent specification. For example, in the patent in suit, the supporting specification portion states that:

<blockquote>
"To dispense product, a user then presses down on the lever handle 102 (moving it toward the body of the can 12). This pushes the nozzle assembly 20 and valve stem 30 down relative to the hinge assembly 16, as described above."
</blockquote>

See col. 6, lines 1-4 of the patent in suit.  That description is almost identical to the description contained in the Prior Art Reference at page 17, lines 21-26, which reads as follows:

> "To dispense product, a user then presses down on the lever handle 166 (moving it toward the body of the can 102).  This pushes the actuator 108 and the valve 104 (which is attached to the actuator 108 via their cooperating screw threads 110, 126) down relative to the boss 106."

Similarly, when the patent in suit describes the action of disengaging the lever, it states:

> "To stop dispensing, the user simply releases the lever handle 102.  This closes the valve by allowing the valve stem 30 to slide back and close access through the ports 32."

Again, almost an identical description is contained in the Prior Art Reference which recites:

> "To stop dispensing, the user simply releases the lever handle 166.  This closes the valve by allowing it to slide back up the bore and closing access through the ports 116."

See page 18, lines 1-4.  As such, if the Court adopts Plaintiff's construction of the "sealingly engageable" claim element, based on the portion of the '064 patent specification cited by Plaintiff, then that limitation is fully disclosed in the Prior Art Reference by the corresponding disclosure therein.

> (2)    it must have an internal thread engaged with the external thread of the valve stem

On page 11, lines 26-27 and 30-32, the Prior Art Reference discloses how "a screw thread is provided on the interior surface of he actuator 108" and that "actuator 108 is placed over the end of the valve portion 104 and screwed onto it by means of cooperation of screw threads 110 and 126."  Thus, this limitation is disclosed in the Prior Art Reference.

-17-

(3)    it must be rotatable relative to the hinge assembly
and the lever

On page 3, lines 17-19, the Prior Art Reference discloses the process of "turning

of the actuator relative to the lever…" Since the lever is attached to the hinge assembly,

any turning of the actuator relative to the lever is also relative to the hinge assembly.

Thus, this limitation is disclosed in the Prior Art Reference.

(4)    it must be rotatable between open and closed
positions of the nozzle assembly

On page 3, lines 19-21, the Prior Art Reference discloses how "turning [the

actuator] may be possible from a "lock-off" position, in which the actuator is clicked

home, to a fully on position." As the "lock-off position" and the "on position" refer to

the closed and open positions respectively, this limitation is disclosed in the Prior Art

Reference.

(5)    it must have an actuator portion

As disclosed on page 16, lines 9-11 of the Prior Art Reference, "the nozzle 174 is

screwed onto an external screw thread 178 provided on the actuator 108." As such, this

screwing creates the nozzle assembly with one part being an actuator portion.

Consequently, this limitation is disclosed in the Prior Art Reference.

(6)    the actuator portion must have a surface that
cooperates with the lever bearing portion

Fig. 5 and page 16, lines 25-27 of the Prior Art Reference discloses how "the

actuating knuckle 184 on the handle 166 contacts the flange 182." The flange 182

corresponds to the required surface of the actuator portion in the '064 patent, and the

actuating knuckle 184 corresponds to the required lever bearing portion. Thus, this claim

limitation is disclosed in the Prior Art Reference.

(7)     the cooperation between the lever and actuator is such that operation of the lever causes movement of the actuator portion which opens the valve and permits flow of the product out of the apparatus

On page 17, lines 21-32, the Prior Art Reference explains that "[t]o dispense product, a user then presses down on the lever handle 166…This pushes the actuator 108 and the valve 104 … down relative to the boss 106…. Product is then urged to flow…op through the valve portion 104 and out through the nozzle 174." Consequently, this claim limitation is disclosed in the Prior Art Reference.

(8)     the movement occurs when the nozzle is in the open position.

The required "open position" is disclosed in the Prior Art Reference in Fig 8b and page 17, lines 13-15, which states "As the actuator 108 turns, the lever handle 166 lifts on the hinge 170 due to the action of the actuating knuckle 184."

Thus, each and every element and limitation of claim 1 of the '064 patent is disclosed in the Prior Art Reference. Consistent with the detailed itemization above, the table below shows how each of element of claim 1 of the '064 patent is taught in the disclosure of the Prior Art Reference. Each limitation of claim 1 of the '064 patent is listed in the left-hand column. The corresponding disclosure in the Prior Art Reference is identified in the center column. The location of the disclosure in the Prior Art Reference is in the right-hand column.

| Claim element | Corresponding Prior Art Reference Element | Location in Prior Art Reference Disclosure |
|---|---|---|
| a container; | Container 102 | Fig. 1; page 2, lines 29-35 |
| a product chamber within the container; | Volume 160 | Fig. 6; page 15, line 14 |
| a tilt valve adjacent to the product chamber and having | Valve 104 | Fig. 2; page 21, lines 19-21 |

-19-

| Claim element | Corresponding Prior Art Reference Element | Location in Prior Art Reference Disclosure |
|---|---|---|
| a valve stem provided with an external thread; | Adjacent to product chamber | page 2, lines 33-34 |
| | Stem w/external screw thread | page 10, lines 24-26 |
| a hinge assembly attached to the container; | Lever cap 162 with base 168 Butterfly hinge 170 Snappers 164 | Fig. 5; page 15, lines 23-33 |
| a lever hingedly attached to the hinge assembly and comprising a bearing portion; and | Control lever or handle 166 hingedly attached | Fig. 5; page 15, lines 24-36 |
| | Actuating knuckle 184 | Fig. 5; page 15, lines 27-27. |
| a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem, | nozzle 174 and actuator 108 | Fig. 2; page 16, lines 9-11 |
| | sealingly engageable | page 17, lines 21-26 and page 18, lines 1-4 |
| | threads 110 and 126 | page 11, lines 26-27 and 30-32 |
| the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus. | rotatable relative to hinge assembly and lever | page 3, lines 17-19 |
| | rotatable between open and closed positions | page 3, lines 19-21 |
| | nozzle 174/actuator 108 | page 16, lines 9-11 |
| | flange 182 | Fig. 5; Figs. 8a, 8b, 8c; page 16, lines 25-27 |
| | open position, operation | Fig. 8b; page 17, lines 21-32 |

   3.    **The Prior Art Reference Teaches Every Element and
         Limitation of Claim 2 from the patent in suit**

Claim 2 of the patent in suit reads as follows:

> 2. A dispensing apparatus according to claim 1 further comprising means for urging said product from said product chamber.

Claim 2 is a dependent claim, depending from claim 1. Hence, all of the claim limitations of claim 1 are deemed to be incorporated into claim 2. As demonstrated above, all of the limitations of claim 1 are disclosed in the Prior Art Reference.

Claim 2 adds a requirement for means for urging said product from said product container. In the Prior Art Reference, the contents of the container are urged out of the dispenser by "virtue of internal pressurization." Page 17, lines 27-28. This is the same means as that described in the patent in suit, which discloses that the invention relates to containers "under pressure of a propellant." (Col. 1, lines 7-8). Therefore, the limitations of dependent claim 2 are fully met by the Prior Art Reference disclosure.

### 4. The Prior Art Reference Teaches Every Element and Limitation of Claim 6

Claim 6 of the patent in suit recites the following:

> 6. A dispensing apparatus according to claim 1 wherein said lever comprises two lever bearing portions arranged at opposite sides of said valve.

Claim 6 is a dependent claim, depending from claim 1. Hence all of the claim limitations of claim 1 are deemed to be incorporated into claim 6. As demonstrated above, all of the limitations of claim 1 are disclosed in the Prior Art Reference.

Claim 6 of the patent in suit adds the requirement that the lever comprises two bearing portions arranged on opposite sides of said valve. The Prior Art Reference discloses a lever (called handle 166) with two bearing portions on opposite sides of the valve which are described as actuating knuckles 184. See Fig. 5 and page 16, lines 24-

-21-

27.  Therefore, the limitations of dependent claim 6 are met as well by the disclosure of the Prior Art Reference.

Thus, as shown above, if Plaintiff's proffered construction of the asserted claims of the patent in suit is accepted, every single limitation of each of the asserted claims is taught by the Prior Art Reference, which necessitates a holding that those claims are invalid.

**B.    The Asserted Claims are Invalid under 35 U.S.C. § 112 Under Defendants' Proposed Constructions**

As demonstrated above, if this Court adopts Plaintiff's proposed constructions, then the asserted claims are invalid by reason of anticipation, because each and every one of their limitations was disclosed in the Prior Art Reference.  If the Court adopts Defendants' construction of the term "nozzle assembly sealingly engageable with the hinge assembly," however, then this Court must still find all of the claims invalid, for failure to comply with 35 U.S.C. §112.

Defendants have construed the claim term "nozzle assembly sealingly engageable with the hinge assembly" to require that (1) there be direct physical contact between the nozzle assembly and the hinge assembly; (2) that such contact causes a seal to be formed; and (3) the seal is formed at the juncture of contact so as to prevent leakage between the nozzle assembly and the hinge assembly.  See Defendants' Memorandum In Support Of Defendants' Proposed Construction of Disputed Claim Terms submitted concurrently with this motion.  As the arguments in support of this claim construction are fully detailed in that motion, they will not be repeated here.  However, if this Court construes

this limitation to require any of (1), (2) or (3) cited above, then this Court must also find that all of the claims of the patent are invalid.

In order to satisfy the statutory requirements of 35 U.S.C. § 112, the description in the specification of the patent in suit must describe all of (1), (2) or (3) above in "full, clear, concise, and exact terms." Id. Instead, it fails to describe any of these features.

While the specification does employ variants of the word "seal," these refer variously to the sealing of the valve, or to forming a seal between the valve stem and the nozzle.[4]  However, in none of these instances is there any mention, suggestion or indication of any sealing in conjunction with any relation or engagement between the nozzle and the hinge assembly.  Likewise, the specification employs variants of the word "engage" at several points[5], but none in conjunction with any description of any relation between the nozzle assembly and the hinge assembly, or in conjunction with any description of any "sealing."

There is no teaching in the specification of the patent in suit of how to accomplish any sealing engagement of the nozzle assembly with the hinge assembly under the plain and ordinary meaning of those claim terms as properly construed.  There is, in fact, no teaching of any relation whatsoever between the nozzle assembly and the hinge assembly during operation of the inventive dispensing apparatus.  Without any such teaching of the claimed element, the patent claim is invalid as failing to satisfy both the written description requirement and the enablement requirement.  See Lockwood v. American

───────────────────

[4] See the '064 patent, at Col. 1, lines 49-50; Col. 3, lines 19, 23, 26, 28, 32, 34, 38, 39 and 41; Col. 4, line 52, and Col. 5, lines 9, 10, 14 and 15.

[5] See the '064 patent, at Col. 1, line 57; Col 4, line 51 and Col. 5, line 19.

Airlines Inc., 107 F.3d 1565 (Fed. Cir. 1997) (affirming district court's ruling of invalidity for lack of adequate written description because specification did not describe the claimed element);  See also Genentech Inc. v. Nordisk A/S, 108 F.3d 1361 (Fed. Cir. 1997) (finding that the patent was invalid as a matter of law for lack of enablement where specification did not describe the claimed element).

**V.    CONCLUSION**

As shown hereinabove, there are no facts in dispute which would preclude a grant of summary judgment of patent invalidity.  Under Plaintiff's proposed construction of disputed claim terms, the asserted claims are anticipated by the prior art and are hence invalid.  Even under Defendants' proposed construction, the patent fails to meet the written description requirement of the patent statute, and the asserted claims are likewise invalid.  Defendants is entitled to summary judgment of invalidity of each of the asserted claims of the '064 Patent one way or the other, depending upon the construction adopted by the Court of the disputed claim terms, and respectfully request entry of the same.

Date: June 30, 2006                    By:    /s/ John G. Harris
                                              John G. Harris, Esq. (No. 4017)
                                              Reed Smith LLP
                                              1201 Market Street, Suite 1500
                                              Wilmington, DE  19801
                                              Tel. (302) 778-7500
                                              Fax (302) 778-7557

OF COUNSEL:
Lloyd McAulay
Reed Smith LLP
599 Lexington Avenue
New York, NY  10022
Tel. (212) 521-5400
Fax: (212) 521-5450