**EXHIBIT 3**

LEXSEE 2006 U.S. APP. LEXIS 14525

PRIMOS, INC., Plaintiff-Appellee, v. HUNTER'S SPECIALTIES, INC. and DAVID FORBES, Defendants-Appellants, and WAYNE CARLTON and CARMEN FORBES, Defendants.

05-1001,-1376

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2006 U.S. App. LEXIS 14525

June 14, 2006, Decided

**PRIOR HISTORY:** [*1] Appealed from: United States District Court for the Northern District of Iowa. Chief Magistrate Judge John A. Jarvey. *Primos, Inc. v. Hunter's Specialties, Inc.*, 159 Fed. Appx. 997, 2005 U.S. App. LEXIS 28122 (2005)

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Brett L. Foster, Holland & Hart LLP, of Salt Lake City, Utah, argued for plaintiff-appellee. With him on the brief were L. Grant Foster and Mark A. Miller.

Edmund J. Sease, McKee, Voorhees & Sease, P.L.C., of Des Moines, Iowa, argued for defendants-appellants. With him on the brief was Jeffrey D. Harty.

**JUDGES:** Before NEWMAN, LOURIE, and PROST, Circuit Judges.

**OPINIONBY:** LOURIE

**OPINION:** LOURIE, Circuit Judge. Hunter's Specialties, Inc. and David Forbes (collectively "Hunter's Specialties") appeal from the judgment of the United States District Court for the Northern District of Iowa of literal infringement, willfulness, and inducement of infringement as to U.S. Patent 5,520,567 and infringement under the doctrine of equivalents as to *U.S. Patent 5,415,578*. Hunter's Specialties also appeals from the court's decision denying a motion for a new trial. Primos, Inc. v. Hunter's Specialties, Inc., No. C01-004 (N.D. Iowa Sept. 9, 2004) ("Final Judgment"). Because we affirm the district court's claim construction of the term "engaging," we also affirm [*2] the court's judgment of literal infringement of the '567 patent. Because we conclude that the application of the doctrine of equivalents was proper, we affirm the court's judgment of infringement of the *'578 patent* under the doctrine of equivalents. Because the court did not abuse its discretion in excluding evidence, and the court's adverse-inference jury instruction did not constitute prejudicial error, we affirm the court's decision denying a new trial on those issues.

BACKGROUND

This appeal involves the *'578 patent* and its continuation, the '567 patent, which are assigned to Primos, Inc. ("Primos") and entitled "Game Call Apparatus." The patents disclose a diaphragm mouth call that hunters use to simulate animal sounds. Figure 1, shown below, is an embodiment of the invention:

GET DRAWING SHEET 1 OF 4. As depicted in that figure, the diaphragm mouth call 10 consists of a frame 18, a membrane 22 that vibrates to produce sound, a flexible peripheral edge 12, and a shelf or plate 15 extending above the membrane. The diaphragm mouth call is placed completely within the user's mouth, with the free-end of the membrane positioned near the opening of the [*3] mouth. '578 patent, col. 2, ll. 62-64. The user holds the diaphragm in place with his or her tongue, while forcing air to travel through a gap between the tongue and the membrane. The air causes the membrane to vibrate and to emit a sound that replicates a particular animal. Id. at col. 1, ll. 31-38. The sound produced by the call is affected by the tongue pressure applied to the membrane and the distance between the membrane and the roof of the mouth. Id. at col. 1, ll. 38-40. The patented diaphragm mouth call claims an improvement over prior mouth call devices in that the shelf or plate provides a constant distance above the membrane and resists upward pressure by the tongue. Id. at col. 2, ll. 15-26. Relevant to this appeal are claim 2 of the *'578 patent* and claim 21 of the '567 patent. Claim 2 of the *'578 patent* reads as follows:

> A game call apparatus to be completely inserted inside a person's mouth for calling game, comprising:
>
> a frame;

a membrane of material stretched over the frame;
a flexible and moldable peripheral edge extending outwardly from the frame; and
a plate having a length, the plate extending generally upward from the frame and over [*4] a portion of the membrane, the plate being differentially spaced above the portion of the membrane at various locations along the length of the plate.

'578 patent, col. 4, ll. 45-55 (emphases added). Claim 21 of the '567 patent reads as follows:

A game call for use inside a person's mouth, comprising:

a U-shaped frame;
a yieldable reed spanning across the U-shaped frame;
a first roof-of-mouth engaging yieldable sealing portion carried by the frame;
a second roof-of-mouth engaging portion extending upwardly from the frame, the second portion being spaced away from the first portion, the first and second portions defining a predetermined orientation of the U-shaped frame insider the mouth relative to the roof of mouth.

'567 patent, col. 6, ll. 20-32 (emphases added). On January 24, 2001, Primos filed suit against its competitor, Hunter's Specialties, alleging that Hunter's Specialties's accused device, known as the Tone Trough, infringed Primos's patents. The accused Tone Trough is a diaphragm mouth call device that, among other features, contains a dome extending above the membrane, instead of a shelf or plate, as claimed in Primos's [*5] patents. Primos subsequently amended its complaint, alleging that individual defendant David Forbes induced infringement of its patents. n1

> n1 The amended complaint also included allegations against individuals Carman Forbes and Wayne Carlton for inducing infringement. The court dismissed Carman Forbes from the case prior to trial, and it ultimately vacated judgment against Wayne Carlton. Thus, only David Forbes and Hunter's Specialties remain as parties to this appeal.

Primos initially moved for summary judgment of literal infringement and for a preliminary injunction against Hunter's Specialties. Hunter's Specialties filed several cross-motions, including for summary judgment of non-infringement, both literally and under the doctrine of equivalents. On July 24, 2002, the court denied all the motions filed by both parties. In its decision, the court construed the term "plate" in claim 2 of the '578 patent to mean "a structural element of relatively uniform thickness and flatness which may also have some moderate curvature to it." Primos v. Hunter's Specialties, No. C01-004 MJM (N.D. Iowa July 24, 2002) ("Summary Judgment Order"). Relying on that construction [*6] of the term "plate," the court found that "reasonable minds could differ as to the presence or absence of a 'plate' in the Tone Trough" and thus denied all summary judgment motions relating to infringement of the '578 patent. Id. Regarding claim 21 of the '567 patent, the court noted that while the term "second-roof-of-mouth engaging portion" is not in dispute, it stated that "it is clear that this language requires that a portion of the claimed device . . . come into contact with the roof of the user's mouth while in use." Id., slip op. at 43. The court then determined that there were genuine issues of material fact relating to whether the Tone Trough device operates when touching the roof of a user's mouth, and therefore denied the summary judgment motions relating to infringement of the '567 patent. Hunter's Specialties then requested a Markman hearing to interpret the term "engaging" in claim 21 of the '567 patent. On March 15, 2004, the court construed that term to mean to "come into contact with." Primos v. Hunter's Specialties, No. C01-004 (N.D. Iowa Mar. 15, 2004) ("Claim Construction Order"). The court rejected Hunter's Specialties' construction of the [*7] term "engaging" as "interlocking," noting that while the word "interlocking," as defined in a standard dictionary, may be appropriate in the context of a transmission or a latch, it is not appropriate in the context of the roof of one's mouth. The court also observed that the specification of the '567 patent did not support a construction of "engaging" to mean "interlocking" because the figures in the patent did not provide any means with which the diaphragm mouth call could interlock in the roof of a mouth. According to the court, it had previously interpreted "engaging" to mean "to come into contact with," and it saw no reason to modify that construction. Hunter's Specialties again moved for summary judgment, asserting that prosecution history estoppel barred the application of the doctrine of equivalents as to the '578 patent in light of our intervening decision in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d 1359 (Fed. Cir. 2003). The court deter-