## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCEP LUSOL HOLDINGS LIMITED,   )
   )
   Plaintiff/Counterclaim Defendant,   )
   )
   v.   )   Civil Action No. 05-141-KAJ
   )
PERMATEX, INC., and ULTRAMOTIVE   )
CORPORATION,   )
   )
   Defendants/Counterclaimants.   )

### PLAINTIFF ROCEP LUSOL HOLDINGS LIMITED'S
### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### OF INFRINGEMENT OF THE CLAIMS IN U.S. 6,685,064

Respectfully submitted,

ROCEP LUSOL HOLDINGS LIMITED

DAVID P. PRIMACK (#4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Tel: 302-467-4224
Fax: 302-467-4201

ROBERT E. CANNUSCIO
Drinker Biddle & Reath LLP
One Logan Square, 18th & Cherry Streets
Philadelphia, PA 19103-6996
Tel: (215) 988-3303
Fax: (215) 988-2757

Attorneys for
ROCEP LUSOL HOLDINGS LIMITED

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

I.    NATURE OF THE CASE AND THE STATUS OF THE PROCEEDINGS ............. 1

II.   SUMMARY OF ARGUMENT AND LEGAL STANDARD .................................... 1

III.  FACTS ................................................................................................. 5

      A.    Background ................................................................................ 5

      B.    The Patent-In-Suit ..................................................................... 6

      C.    The Defendants and the Accused Product ....................................... 9

IV.   ARGUMENT ......................................................................................... 11

      A.    The Accused Product Infringes Claim 1 of the '064 Patent .......................... 11

      B.    The Accused Product Infringes Claim 2 of the '064 Patent .......................... 18

      C.    The Accused Product Infringes Claim 6 of the '064 Patent .......................... 19

V.    CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Becton Dickinson & Co. v. C.R. Bard Inc.*, 922 F.2d 792 (Fed. Cir. 1990) ..............................2

*Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996)..............2, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................2

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).....................................2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ..........................5

*General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978 (Fed. Cir. 1997)..................................3

*Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444 (Fed. Cir. 1991)..................................2

*Knabe v. The Boury Corp.*, 114 F.3d 407 (3d Cir. 1997) ..........................................................2

*Lemelson v. U.S.*, 752 F.2d 1538 (Fed. Cir. 1985)....................................................................3

*Read Corp. v. Protec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992).......................................................3

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ......................................2

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) ......................4

*Zodiac Pool Care, Inc. v. Hoffinger Indus.*, 206 F.3d 1408 (Fed. Cir. 2000)............................3

## RULES AND STATUTES

35 U.S.C. § 271(a) ....................................................................................................................2

Fed. R. Civ. P. 56(c) .................................................................................................................1

## I.    NATURE OF THE CASE AND THE STATUS OF THE PROCEEDINGS

This case involves a claim for patent infringement. Plaintiff Rocep Lusol Holdings Limited ("Rocep") is the owner of US Pat. 6,685,064 ("the '064 Patent") which claims a novel dispensing apparatus. Rocep has brought an action against Ultramotive Corporation ("Ultramotive") and Permatex, Inc. ("Permatex") for infringement of the '064 Patent.

The parties have concluded discovery and, pursuant to the Scheduling Order, the parties are to file their respective dispositive motions. Rocep moves for summary judgment of infringement of claims 1, 2, and 6 of the '064 patent" (Exhibit A) asserted by Rocep against a accused dispensing container (the "Accused Product") manufactured and sold by Defendant Ultramotive and sold by Defendant Permatex (collectively, "the Defendants").

There are no genuine issues of material fact to refute a conclusion that the Defendants' Accused Product infringes the claims of the '064 Patent.

## II.    SUMMARY OF ARGUMENT AND LEGAL STANDARD

### 1.    Standard for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure governs the granting of summary judgment and provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). "Upon a motion for summary judgment, the non-moving party, to prevail, must 'make a showing sufficient to establish the existence of [every] element

essential to that party's case, and on which that party will bear the burden of proof at trial' ". *Knabe v. The Boury Corp.,* 114 F.3d 407, 410 n.4 (3d Cir. 1997) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

    2.     These legal standards for summary judgment apply equally for a patent case as for any other. *Becton Dickinson & Co. v. C.R. Bard Inc.*, 922 F.2d 792, 795-96 (Fed. Cir. 1990).

    **3.**     **The Law Relating to Patent Infringement**

    Only one valid enforceable claim of a patent needs to be infringed for liability to arise under 35 U.S.C. § 271(a). *Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1562 (Fed. Cir. 1996) *cert. denied*, 519 U.S. 911 (1996). Determining patent infringement is a two-step process. First, the court must construe the claims as a matter of law. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). To this end, the court must determine the correct scope and meaning of any disputed claim term. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002). Second, the accused device must be compared to the properly construed claims to determine whether each of the elements required by the claims, or equivalents of those elements, is found in the accused device. *Id.*

    4.     *Claim Construction*

    Proper claim construction is paramount to resolution of a patent infringement issue because "[i]mproper claim construction can distort the entire infringement analysis." *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1448 (Fed. Cir. 1991). A detailed discussion of the proper construction of the claims is presented in the concurrently filed

- 2 -

PLAINTIFF ROCEP LUSOL HOLDINGS LIMITED'S MEMORANDUM ON CLAIM CONSTRUCTION FOR U.S. 6,685,064 (referred to hereinafter as "Rocep's Memorandum on Claim Construction.") The claim construction advocated by Rocep is set forth below and forms the basis of this motion for summary judgment of infringement.

5.  *Infringement Analysis*

A patent can be infringed either literally or under the doctrine of equivalents. In either situation, the patent owner must prove infringement by a preponderance of the evidence. *Lemelson v. U.S.*, 752 F.2d 1538, 1547 (Fed. Cir. 1985).

6.  Literal Infringement

To infringe a claim literally, the accused device must incorporate every element of the claim exactly. *See Zodiac Pool Care, Inc. v. Hoffinger Indus.*, 206 F.3d 1408, 1415 (Fed. Cir. 2000). To make such a determination, all the elements in every disputed claim are compared with the accused device to discover if the elements are present in the accused device. *Read Corp. v. Protec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992). Whether or not a properly construed claim corresponds to or "read(s) onto" the accused device is generally one of fact. *See General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).

7.  Moreover, a patent claim may be infringed even if the accused device contains additional features not recited in the claim, as long as the accused device has all of the claimed features. That is, the addition of features to a device otherwise covered by a patent claim does not preclude the claim from being infringed.

8.      Infringement by the Doctrine of Equivalents

Even if the accused device does not literally infringe the claims, the accused device can still infringe the claims under the judicially-created doctrine of equivalents. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21 (1997). The doctrine of equivalents was developed by the courts to prevent an infringer from "pirating" the patentee's invention.[1] The doctrine of equivalents can be raised on a particular element of a claim only when literal infringement is not found, and exists to protect a patent holder from those who make only insignificant changes to an invention to avoid literal infringement while still appropriating the patent holder's invention. In short, exact identity between the claimed invention and the accused process is not required.

9.      Under the doctrine of equivalents, the "essential inquiry" is "[d]oes the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40. This inquiry is performed on an "element-by-element basis." *Id.*

10.     One way, but not the only way, for an element of an accused device to be considered equivalent to an element of the claimed invention is if the differences between the accused device and the patented device are "insubstantial." This test is sometimes referred to as the "insubstantial differences" test and was enunciated in *Warner-Jenkinson Co., Inc. v.*

---

[1] "The language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty. If patents were always interpreted by their literal terms, their value would be greatly diminished. Unimportant or insubstantial substitutes for certain elements could defeat the patent, and its value to investors could be destroyed by simple acts of copying…. The scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002) *citing Winans v. Denmead*, 15 How. 330, 347 (1854).

*Hilton Davis Chemical Co.*, 520 U.S. at 40, the controlling case on this subject. Another way in which infringement may be found under the doctrine of equivalents is if the accused device performs substantially the same function as the claimed invention, in substantially the same way, to achieve the same result. This test is known as the "triple identity" test and may be suitable for analyzing mechanical devices. Both the insubstantial differences test and the triple identity test "allow[] the patentee[] to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).

11.    The patent holder, however, can be prevented from claiming a full range of equivalents through the doctrine of prosecution history estoppel. An estoppel may arise when a narrowing amendment (i.e., one which narrows the scope of the patent) is made to satisfy any requirement of the Patent Act, and primarily occurs in the context of an amendment made to avoid the prior art. *Festo*, 535 U.S. at 727. Although prosecution history estoppel precludes a patent holder from claiming a wide range of equivalents as to the claim element that was narrowed, it is not a complete bar, and its reach requires an examination of the subject matter surrendered by the narrowing amendment. *Id.* at 726-727, 730.

## III.    FACTS

### A.    Background

Rocep Lusol Holdings was incorporated in 1973. The company was founded by Bernard Frutin M.B.E. and Bob Swandells. Mr. Frutin is currently the Chairman and Chief Executive of the company. Mr. Frutin is also the sole inventor on the '064 patent.

With over 200 patents to his name granted in respect of 15 different products, Mr. Frutin is one of the most prolific inventors in the United Kingdom. He and the company have a particular interest in finding solutions to packaging and dispensing problems. The company's innovative approach to aerosol technology has allowed it to produce creative products with practical applications, many of which have been patented. These patented products create some of the most outstanding convenience systems for the packaging and dispensing of thick, sticky, and difficult to handle materials such as sealants, adhesives, mastics, gap fillers, and even grease, without waste or mess.

### B.    The Patent-In-Suit

The '064 patent issued on February 3, 2004, and is based on a PCT application filed on December 22, 2000, which claims priority from Great Britain application 9930773 filed on December 30, 1999. The PCT application, PCT/GB00/04967, as originally filed included 15 claims. Those claims formed the basis for the claims that were filed in the United States application, Application Serial No. 10/169,290, but were amended in a first preliminary amendment filed with the national application on June 28, 2002.[2] The first preliminary amendment made non-substantive modifications to the claims to eliminate multiple dependencies and provide proper antecedent basis for some of the terms.

A second preliminary amendment was filed on October 9, 2002. This preliminary amendment included more substantive amendments to the claims including the cancellation of original claims 3-5, 10, 13 and 14, and the amendment of claim 1 to identify the "valve" as

---

[2] The prosecution history of the '064 Patent and the priority documents of the '064 Patent are presented as Exhibits B to D in the concurrently filed Plaintiff Rocep Lusol Holding Limited's Memorandum on Claim Construction for U.S. 6,685,064.

a "tilt valve", and to include threads on the valve stem and the inside of the nozzle assembly. The second preliminary amendment notes that the amendments were made to place the claims in better form for examination. Since this application originated in the United Kingdom, the claims that were nationally filed in the United States had a British flavor to them. It is quite customary to amend foreign originating claims so that they are in better form for examination in the United States.

During prosecution of the application, there were no substantive rejections of the claims made by the United States Patent and Trademark Office ("USPTO"). A Notice of Allowance was issued by the USPTO which included the following statement from the Examiner regarding his reasons for allowing the claims: "the prior art fails to disclose or render obvious a dispensing apparatus in combination with the other claimed limitations of claim 1". The Examiner went on to restate the language of the nozzle assembly recited in claim 1.

As allowed, the '064 patent includes 9 claims. Of those claims, only claims 1, 2 and 6 are currently asserted against the Accused Product. The text of those claims are as follows.

    *1.  Claim 1*

   A dispensing apparatus for dispensing a product from a container, said apparatus comprising:

      a container;

      a product chamber within the container;

      a tilt valve adjacent to the product chamber and having a valve stem provided with an external thread;

a hinge assembly attached to the container;

a lever hingedly attached to the hinge assembly and comprising a bearing portion; and

a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem,

the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus.

2.      *Claim 2*

A dispensing apparatus according to claim 1 further comprising means for urging said product from said product chamber.

3.      *Claim 6*

A dispensing apparatus according to claim 1 wherein said lever comprises two lever bearing portions arranged at opposite sides of said valve.

C.    **The Defendants and the Accused Product**

1.    *Permatex, Inc.*

Permatex, Inc. ("Permatex") is a subsidiary of Illinois Tool Works ("ITW"). Permatex is a distributor of products to various industries including the automotive industry. One line of products sold by Permatex, and forming the center of the infringement issue in this case, is a dispensing container that Permatex refers to as the POWERBEAD dispenser can. This is one of the products that infringes claims 1, 2 and 6 of the '064 patent. The POWERBEAD dispenser can was first introduced in 2002. [Exhibit B, Deposition of M. Bolinsky, 14:17-15:1].

Although the POWERBEAD dispenser can is sold under Permatex's name and marks, the product is manufactured by Ultramotive Corporation.

2.    *Ultramotive Corporation*

Ultramotive Corporation ("Ultramotive") is a defendant in this case. Ultramotive manufactures and sells dispensing canisters, including a lever-operated dispenser can referred to as the ULTRAPAK. The lever-operated Ultrapak dispenser can is the same dispenser can as the Powerbead dispenser can, and therefore is included within the definition of Accused Product.

3.    *The Accused Product*

The POWERBEAD dispenser can and the lever-operated ULTRAPAK dispenser refer to the same product and, thus, are both identified herein as the Accused Product.

The Accused Product is a dispensing container that includes an internal chamber that contains a product to be dispensed. Exhibit C-1 illustrates two Accused

Products, one having the hinge assembly and lever attached, and another having the hinge assembly and lever removed. Inside the pictured can is an RTV silicone, which is a liquid product. [Exhibits C-1 and C-2; Exhibit F, ¶ 8].

The Accused Product includes a valve that opens to permit dispensing when it is vertically actuated or tilted. [Exhibits C-3 and C-4; Exhibit F, ¶ 10, 13 – 15] A nozzle is attached to the valve and can be rotated from a closed position to an open position. [Exhibit C-5, Exhibit F, ¶ 20 – 22]

The Accused Product includes a wire lever that is attached to a hinge or platform. [Exhibit C-6, Exhibit F, ¶ 16 – 17] The hinge is attached to the container such that the arms of the wire lever extend around each side of the valve. [Exhibit C-7, Exhibit F, ¶ 18]

Rotation of the nozzle transitions the lever into a position where is can be actuated to dispense the product. [Exhibits C-8 and C-9; Exhibit K; Exhibit F, ¶ 29] When the lever is depressed, it causes the nozzle to unseal the valve, thereby allowing pressure within the can to force product out. [Exhibit D-1, Figures 2 and 3; Exhibit C-4; Exhibit K; Exhibit F, ¶ 29] When the lever is released, the internal pressure of the container coupled with the resiliency of the grommet portion of the valve causes the valve to move the nozzle up, sealing the valve while positioning the lever back into position to dispense. [Exhibit D, Figure 4, Exhibit C-10, Exhibit F, ¶ 31]

IV.    **ARGUMENT**

    A.    **The Accused Product Infringes Claim 1 of the '064 Patent.**

As detailed in Table 1 [Exhibit E], the accompanying figures[3] [Exhibit D], the photographs of the Accused Product [Exhibit C], the Affidavit of Bernard Frutin [Exhibit F], and the corresponding discussion below, the Accused Product incorporates each and every element recited in Claim 1 of the '064 Patent.

In their respective responses to the Interrogatories, Defendants Permatex and Ultramotive have raised no dispute that the Accused Product includes the following elements of claim 1.

1 - The Accused Product is a dispensing apparatus.

2 - The Accused Product includes a container.

3 - The Accused Product has a product chamber within the container.

4 - The Accused Product includes a hinge assembly attached to the container.

5 - The Accused Product includes a lever that is hingedly attached to the hinge assembly, and which includes a bearing portion.

6 - The Accused Product includes a means for urging the product from the product chamber.

7 - The Accused Product includes two lever arms with bearing portions arranged on opposite sides of the valve.

---

[3] The figures were generated based on the figures in U.S. Pat. No. 6,340,103 ("the '103 Patent"). The '103 Patent, which is assigned to Ultramotive, is marked on the side of the Accused Product and describes the construction and operation of the Accused Product. [Exhibit C-11]

Specifically, Interrogatory 3 requested that the Defendants identify the elements of claims 1, 2 and 6 that are not found in their products. None of the elements above were identified. [Exhibit G, Defendant Permatex Inc.'s Objections and Responses to Plaintiff Rocep Lusol's First Set of Interrogatories Nos. 1-13 to Defendant Permatex; and Exhibit H, Defendant Ultramotive Corporation's Objections and Responses to Plaintiff Rocep Lusol's First Set of Interrogatories Nos. 1-13 to Defendant Ultramotive.]

During the Deposition of Ultramotive's corporate representative, Christian Scheindel, he was asked whether there was any further factual evidence to support Ultramotive's position that it does not infringe claims 1, 2 and 6. He replied that there was no other factual evidence. [Exhibit I]

During the Deposition of Permatex's corporate representative, Mitchell Bolinsky, he was asked whether there was any further factual evidence to support Ultramotive's position that it does not infringe claims 1, 2 and 6. He replied that there was no other factual evidence. [Exhibit J]

Accordingly, there is no dispute that the above noted elements of the claim are met by the Accused Product. As shown in the photographs in Exhibit C, the figures in Exhibit D, and the Permatex brochures in Exhibit K, these elements are clearly present in the Accused Product.

Thus, this brief concentrates on the elements that the Defendants have argued in their Interrogatory responses are not present in the Accused Product. It is respectfully submitted that all the remaining elements of claims 1, 2 and 6 are present in the Accused Product.

1.    *The Accused Product Includes A Tilt Valve With A Valve Stem
       That Has An External Thread*

Claim 1 recites:

"a tilt valve adjacent to the product chamber and having a valve stem
provided with an external thread."

As discussed in Rocep's Memorandum on Claim Construction, the term tilt
valve of the claim 1 means:

a valve that, when not otherwise constrained, opens when a portion of
the valve (the valve stem) is tilted or displaced axially relative to a
seal.

The Accused Product includes a valve having a valve stem.  The valve stem
has an external thread.  [Exhibit C-3 and D-1; Exhibit F, ¶ 11]    When the valve stem is
displaced axially or when the valve stem is tilted, the valve opens.  [Exhibits C-4 and D-1;
Exhibit F, ¶ 13 – 14]  The photograph in Exhibit C-4 clearly shows that by applying lateral
displacement to the nozzle, i.e., tilting the valve, the product flows out of the container.
Since the product in these canisters can only dispense when the valve is open, there is no
factual dispute that the valve is a tilt valve.  [Exhibit F, ¶ 25 – 27; Exhibit K]

Accordingly, there is no dispute that the Accused Product includes a tilt valve
as recited in claim 1.  Thus, this element of the claim is literally met.

2.    *The Accused Product Includes A Lever Hingedly Attached To
       The Hinge Assembly And Including A Bearing Portion.*

Claim 1 recites:

"a lever hingedly attached to the hinge assembly and comprising a
bearing portion"

As discussed in Rocep's Memorandum on Claim Construction, there is no
dispute as to the term "lever".  The term "hinge assembly" in the claim 1 means:

a hinge that is attached to the container and to which another component is pivotally attached.

As discussed above, the Defendants have not disputed that their device includes a hinge assembly, and it would be difficult to do so since it does include a plastic ring that clips onto the container. [Exhibits C-6 to C-9; Exhibit F, ¶ 16 – 17]

The Defendants have also not dispute that the Accused Product includes a wire lever attached to the hinge assembly and which includes a bearing portion. The attachment is a hinged attachment since it permits the wire lever to pivot about the attachment point. [Exhibits C-6 to C-9; Exhibit F, ¶ 18] The lever also includes a bent portion that bears against a top surface of the nozzle assembly. [Exhibits C-8 and C-9; Exhibit F, ¶ 28] The bearing portion engages with the actuator portion of the nozzle assembly to control the opening of the valve.

Accordingly, there is no genuine dispute that the Accused Product includes a lever and hinge assembly as properly interpreted. Thus, these elements of the claim are literally met.

3.    *The Accused Product Includes A Nozzle Assembly Sealingly Engageable With The Hinge Assembly With An Internal Thread Engaged With The External Thread Of The Valve Stem*

Claim 1 recites:

"a nozzle assembly sealingly engageable with the hinge assembly and provided with an internal thread engaged with the external thread of the valve stem"

As discussed in Rocep's Memorandum on Claim Construction, there is no dispute that a nozzle is a tapered conduit through which a product being dispensed from the container flows. Thus, as set forth in Rocep's Memorandum on Claim Construction, this element of the claim means:

> a nozzle and any other components which may be connected to the nozzle, such as an end cap or actuator, the nozzle and other components being configured such that it can, in certain conditions, engage with the hinge assembly, for example by means of the lever, and can form a seal.

The Accused Product includes a plastic nozzle having a tapered conduit and a base. A portion of the tapered conduit immediately adjacent to the base includes an internal thread. The internal thread mates with the external thread of the valve stem. [Exhibits C-6, C-8, and C-9; Exhibit F, ¶ 22] The base includes an upper surface that engages with the bearing portion of the lever (*i.e.*, the bearing portion rides on and bears against the upper surface of the base). [Exhibits C-8 and C-9; Exhibit F, ¶ 28] Thus, the nozzle assembly is engaged with the hinge assembly through the lever.

Moreover, in operation, when the nozzle assembly is at least partially unthreaded from the valve stem (i.e., the dispenser is opened), the nozzle assembly rises, causing the lever, which is engaged with the top surface of the nozzle assembly, to pivot about the hinge assembly into an actuating position. *See* Figure 2. When a user then depresses the lever, pivoting the lever about the hinge point, the bearing portion of the lever applies a downward force on the upper surface (actuator portion) of the nozzle assembly's base, causing the nozzle assembly to axially displace the valve stem, thereby unsealing the valve. [Exhibit D, Figure 3] Upon release of the lever, a series of interconnected movements occur. [Exhibit D, Figure 4] The resiliency of the deformed rubber valve urges the valve

and the valve stem upwards. The rising of the valve stem causes the nozzle assembly to rise, while at the same time the valve moves toward sealing. This rising of the nozzle assembly pushes the bearing portion of the lever, which is in contact with the upper surface of the nozzle assembly's base, upwards. The rising of the lever causes the lever to rotate about its attachment point with the hinge assembly. In short, the release of the lever causes the nozzle assembly, and consequently the lever, to rise resulting in the lever rotating about the hinge assembly as the valve seals, thus sealing off flow through the nozzle. Therefore, the nozzle assembly is not only engaged with the hinge assembly by way of the lever, it is sealingly engaged with the hinge assembly by way of the lever as the engagement of the nozzle assembly and the hinge assembly is effected by the sealing of the valve.

Based on the foregoing, this element of the claim is literally met by the Accused Product.

    4.    *The Accused Product Includes A Nozzle Assembly That Rotates Between Open And Closed Positions And Includes An Actuator Portion With A Surface Which Cooperates With The Lever Bearing Portion.*

Claim 1 recites:

"the nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions of said nozzle assembly and including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus."

As discussed in Rocep's Memorandum on Claim Construction, the phrase "nozzle assembly being rotatable relative to the hinge assembly and the lever between open

and closed positions of said nozzle assembly" means the nozzle assembly rotates relative to the hinge assembly to any desired position between open and closed positions.

Additionally, the "nozzle assembly... including an actuator portion provided with a surface which cooperates with the lever bearing portion such that in the open position of said nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus" means that the nozzle assembly includes an actuator that is the base of the nozzle assembly and which includes an upper surface that engages with the bearing portion when the lever is depressed, thereby forcing the nozzle assembly to push the valve stem downward, opening the valve.

There is no dispute that the nozzle is threaded onto the valve stem. The nozzle is unconnected from the hinge and, thus, can be rotated relative to the hinge. When the nozzle is threaded completely down on the valve stem, the bottom of the nozzle bears against the mounting cup that holds the valve. This position prevents the valve from moving down or tilting. Thus, the valve is closed. [Exhibit D, Figure 1]

Rotation of the nozzle on the valve stem transitions the bottom of the nozzle away from the mounting cup. The unscrewing causes the nozzle assembly to rotate relative to the hinge assembly and the lever, which although movable, remain stationary. Once there is sufficient separation, the valve is able to move vertically, thus permitting the valve to be actuated to dispense the product. This is the open position of the valve. [Exhibit C-9, Exhibit D, Figure 2, Exhibit F, ¶ 26]

With the nozzle assembly in an open position, the lever assumes an actuating position with the bearing portion of the lever engaging the top surface or the actuator portion of the nozzle assembly's base. That is, the actuator is the portion of the nozzle that includes

a surface which is engaged with the lever so as to open the valve when the lever is depressed (i.e., actuated.) More specifically, when the user actuates the lever, the lever bearing portion bears onto the actuator portion or surface of the nozzle assembly. Since the nozzle assembly is threaded onto the valve stem, the bearing on the actuator portion causes downward movement of the valve stem, thereby opening the valve. [Exhibit D, Figure 3; Exhibit K]

Based on the foregoing, this element of the claim is literally met by the Accused Product.

5.    *The Accused Product Literally Infringes Claim 1 Of The '064 Patent.*

As detailed above, the Accused Product literally incorporates each and every element of Claim 1 of the '064 Patent. Therefore, the Accused Product literally infringes the claim and an analysis under the doctrine of equivalents is unnecessary.

**B.    The Accused Product Infringes Claim 2 of the '064 Patent.**

Claim 2 of the '064 patent depends from Claim 1. Therefore, for the Accused Product to infringe Claim 2, it must include each and every element recited in Claim 1 plus each and every element recited in Claim 2. As discussed above, the Accused Product incorporates each and every element of Claim 1. In addition, as detailed in Table 2 [Exhibit E], the accompanying figures [Exhibit D], and the corresponding discussion below, the Accused Product incorporates each and every element recited in Claim 2.

1.    *The Accused Product includes "means for urging said product from said product chamber."*

As stated in the specification of the '064 Patent, the means for urging the product from the chamber can be "any suitable automatic or manual pressure inducing

arrangement." [Exhibit A, col. 5, ll. 54-57.] A non-limiting example recited in the specification of a pressure inducing arrangement is a piston. [Exhibit A, col. 5, ll. 49-54.] As noted above, the Defendants have not disputed this interpretation.

The Accused Product includes a piston in the product chamber. [Exhibit D, Figures 1-4] The piston urges the product in the product chamber of the Accused Product. Therefore, the Accused Product incorporates the means element recited in Claim 2 of the '064 Patent.

The label on the Accused Product identifies U.S. Patent Nos. 5,419,466, 4,913,323; and 5,065,900, all of which show a dispensing can with a piston inside. [Exhibit C-11]

As discussed above, the Defendants do not dispute that the Accused Product includes a component (such as a piston) that urges product out of the container. Hence, there is no dispute that the features of claim 2 are literally found in the Accused Product.

Since the Accused Product incorporates each and every element of Claim 1 and incorporates the means element recited in Claim 2, the Accused Product infringes Claim 2 of the '064 Patent.

**C.    The Accused Product Infringes Claim 6 of the '064 Patent.**

Claim 6 of the '064 patent depends from Claim 1. Therefore, for the Accused Product to infringe Claim 6, it must include each and every element recited in Claim 1 plus each and every element recited in Claim 6. As discussed above, the Accused Product incorporates each and every element of Claim 1. In addition, as detailed in Table 3 [Exhibit

E], the accompanying figures [Exhibit D], and the corresponding discussion below, the Accused Product incorporates each and every element recited in Claim 6.

> 1.    The Accused Product's "lever comprises two lever bearing portions arranged at opposite sides of said valve."

Claim 6 recites that the

"lever comprises two lever bearing portions arranged at opposite sides of said valve"

As set forth in Rocep's Memorandum on Claim Construction, this term means that the lever includes two arms, each having a bear portion that is located on opposite sides of the valve when the lever is mounted to the container. As discussed above, the Defendants have not disputed this interpretation.

As shown in Figure 5 of Exhibit D and in Exhibit C-7, the lever in the Accused Product has two parallel wire arms, one on either side of the nozzle assembly. Both of the wire arms include bent portions that operate as bearing surfaces against a portion of the nozzle assembly. [Exhibits C-8 and C-9; Exhibit D, Figures 1 – 4] The Defendants have not disputed the fact that the Accused Product includes this feature of claim 6. Accordingly, there is no dispute that the Accused Product incorporates the lever element recited in Claim 6 of the '064 Patent.

Based on the foregoing, since the Accused Product incorporates each and every element of Claim 1 and incorporates the lever element recited in Claim 6, the Accused Product infringes Claim 6 of the '064 Patent.

## V.    **CONCLUSION**

Rocep respectfully submits that, following the definitions of the pertinent claim terms set forth in Plaintiff's Memorandum on Construction, there is no genuine issue of material fact that the Defendants' Accused Product literally infringes claims 1, 2, and 6 of the '064 Patent.

Only one claim of the '064 needs to be infringed for this Court to find infringement. *Bio-Technology*, 80 F.3d at 1562. Accordingly, it is respectfully urged that the Court grant Rocep's Motion for Summary Judgment as to infringement of the asserted claims of the '064 Patent.

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
|  |  | ROCEP LUSOL HOLDINGS LIMITED |
| Date: June 30, 2006 | BY: | /s/ David P. Primack |

ROCEP LUSOL HOLDINGS LIMITED

Date: June 30, 2006        BY:    /s/ David P. Primack
DAVID P. PRIMACK (#4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Tel: 302-467-4224
Fax: 302-467-4201

ROBERT E. CANNUSCIO
Drinker Biddle & Reath LLP
One Logan Square, 18th & Cherry Streets
Philadelphia, PA 19103-6996
Tel: (215) 988-3303
Fax: (215) 988-2757

Attorneys for
ROCEP LUSOL HOLDINGS LIMITED