IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCEP LUSOL HOLDINGS LIMITED<br><br>Plaintiff and Counterclaim defendant,<br><br>v.<br><br>PERMATEX, INC. and<br>ULTRAMOTIVE CORPORATION<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. –CV-05-141(KAJ)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MEMORANDUM ON**

**<u>CLAIM CONSTRUCTION FOR U.S. 6,685,064</u>**

John G. Harris, Esq. (No. 4017)
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Tel. (302) 778-7500
Fax (302) 778-7575

OF COUNSEL:
Lloyd McAulay, admitted *pro hac vice*
Stephen Chin, admitted *pro hac vice*
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax: (212) 521-5450

## Table of Contents

I. INTRODUCTION ..................................................................................................................1
    A. Defendants Withdraw Their Proposed Construction Concerning the Open and Closed Position of the Nozzle Assembly ..................................................................1
    B. Plaintiff's Proposed Constructions Do Not Follow From a Proper Claim Construction Process.........................................................................................................1
    C. Plaintiff's Proposed Constructions Subvert the Notice Function of the Claim Language ................................................................................................................2
II. ARGUMENT........................................................................................................................3
    A. Plaintiff's Proposed Construction of "Tilt Valve" is Overly Broad ........................3
        1. Plaintiff's proposed construction is so overly broad so that it includes valves that could not tilt................................................................3
        2. Plaintiff has selectively cited the '064 patent specification citation so as to arrive at an overly-broad construction of the term "Tilt Valve" ..................................................................................................................4
        3. The patentee limited "tilt valve" to mean "a cheap, conventional, off-the-shelf valve of the type widely used in dispensing devices that is designed to open when the valve stem is tilted" to meet the Objects of the Invention...........................................................................5
    B. Plaintiff's Proposed Construction of the "Sealingly Engageable" Limitation is Inconsistent with the Patent Specification and Subverts the Core Notice Function of Patent Claims ...................................................................6
        1. The Patentee claimed a nozzle assembly sealingly engageable "with the hinge assembly." This limitation is not directed to and cannot encompass the function of the sealing (i.e., closing) of the valve..............................................................................................................6
        2. The patentee did not claim a nozzle assembly sealingly engageable with the hinge assembly by means of the lever ...........................7
        3. Because the patentee consistently used "engage" in the patent specification to mean direct contact between the components so engaged, it must have the same meaning in the claims ...............................8
        4. The patent specification teaches that a sealing engagement is direct contact between the components so engaged, with a seal formed at the juncture of that direct contact.....................................................9
        5. The language of the rest of Claim 1 itself dictates that "engageable" elements must be able to come into direct contact with one another..................................................................................................10
        6. The portions of the specification cited by Plaintiff do not support Plaintiff's proposed construction of the "sealingly engageable" limitation ............................................................................................................11
    C. Plaintiff's Proposed Construction of the "Actuator Portion" Claim Limitation is Broader Than the Disclosure of the Patent Specification.................12
        1. Plaintiff's omission of limiting portions of the patent specification leads to an overly broad construction the "actuator portion" .....................12

        2.       The patent in suit teaches that it is positioning of the cam surface relative to the lever that moves the lever into or out of position for operation. ...................................................................................................13

        3.       There is no teaching or suggestion in the patent in suit to screw the nozzle assembly up the threads of the valve stem in order to place the lever into position for operation. .......................................................14

III.    SUMMARY AND CONCLUSION ...................................................................................15

## Table of Authorities

### Cases

Callicrate v. Wadsworth Mfg., Inc. 427 F.3d 1361 (Fed. Cir.2005) .............................................. 11

Inpro II Licensing S.A.R.L. v. T-Mobile USA Inc. (2006 U.S.App. LEXIS 11675) .................... 13

Kinik Co. v. Int'l Trade Comm'n., 362 F.3d 1359 (Fed. Cir. 2004) ............................................. 14

Merck & Co. v. Teva Pharms., USA, Inc., 347 F.3d 1367 (Fed.Cir. 2003) .................................... 9

Netword, LLC. V. Centraal Corp., 242 F.3d 1347 (Fed. Cir. 2001) ....................................... 13, 15

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir.,2005) ............................................................... 11

Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350 (Fed. Cir. 1999) .............................. 7

Rexnord Corp. v. Laitram Corp., 274 F.3d 1336 (Fed.Cir.2001) .................................................. 11

Tate Access Floors, Inc. v. Interface Architectural Resources, Inc., 279 F.3d 1357 (Fed. Cir. 2002) ................................................................................................................................. 7

Defendants, Permatex, Inc. and Ultramotive Corporation (collectively, "Defendants"), respectfully submit the following memorandum in opposition to Plaintiff's Memorandum on Claim Construction for U.S. 6,685,064 ("the patent in suit" or "the '064 patent"), filed June 30, 2006.

## I.   INTRODUCTION

### A.   Defendants Withdraw Their Proposed Construction Concerning the Open and Closed Position of the Nozzle Assembly

In the interests of judicial economy and of bringing the Court's attention to bear on only the most critical issues of claim construction, Defendants have decided to no longer contest Plaintiff's proposed construction of the claim limitation "nozzle assembly being rotatable relative to the hinge assembly and the lever between open and closed positions."

### B.   Plaintiff's Proposed Constructions Do Not Follow From a Proper Claim Construction Process

Plaintiff's proposed constructions of other disputed claim limitations, however, remain unduly broad and unsupportable, as a matter of law. Defendants will not burden the Court by reiterating the arguments against these constructions provided in Defendants' opening claim construction brief. Certain assertions by Plaintiff in its claim construction brief do, however, require comment.

In particular, Plaintiff's proposed constructions for the "tilt valve," "nozzle assembly sealingly engageable with the hinge assembly" and "actuator portion" claim limitations are untenable in view of the well-established proper steps for claim construction.

Claim construction begins by reading the claims at issue with the other claims of the patent, giving the claim terms their plain and ordinary meaning to one of skill in the relevant art. Next, claim terms should be compared to the specification, which acts as a dictionary to define

1

the claim terms. The Court should define the claim terms in accordance with the specification's general statements or summary of the invention, objects of the invention, and explicit exclusions of subject matter. If, and only if, claim terms remain ambiguous after consideration of this intrinsic evidence, the Court may consider extrinsic evidence such as books, treatises, dictionaries, and testimony of experts. Extrinsic evidence, however, may never contradict the intrinsic evidence.[1]

Plaintiff gives lip service to these rules by citing to portions of the patent specification in support of its proffered constructions for "tilt valve," "a nozzle assembly sealingly engageable with the hinge assembly," and "actuator portion." Upon examination, however, these citations are selectively incomplete, unrelated to the claim language at issue, or inconsistent with the constructions proffered by Plaintiff.

### C. Plaintiff's Proposed Constructions Subvert the Notice Function of the Claim Language

As discussed in greater detail in Defendants' Memorandum in Support of Defendants' Construction of Disputed Claim ("Defendants' Opening Claim Construction Brief"),[2] the claims of a patent must give notice to the public as to what constitutes trespass of the patent grant, and must provide the means by which the public can guide itself to avoid trespass. This notice function of the claims is one of the most critical doctrines in patent law, and necessarily informs a proper construction of disputed claim terms. Plaintiff has proffered constructions which subvert this notice function. It is a violation of the patent grant for the patentee to assert a claim

---

[1] See Section III of the Memorandum in Support of Defendants' Proposed Construction of Disputed Claim Terms, filed June 30, 2006 ("Defendants' Opening Claim Construction Brief") for the case law applicable to the claim construction process.

[2] Specifically, Section I.B., beginning at page 2, of Defendants' Opening Claim Construction Brief.

in a zone of technology which is not clearly set forth in the patent claims. It is likewise a violation of the patent grant to assert a claim scope that is not in conformity with the teachings set forth in the patent specification.

## II.  ARGUMENT

### A.  Plaintiff's Proposed Construction of "Tilt Valve" is Overly Broad

#### 1.  Plaintiff's proposed construction is so overly broad so that it includes valves that could not tilt.

In order to cover Defendants' products under the ambit of the '064 patent, Plaintiff asserts a broad construction of the claims that is not in harmony with the plain and ordinary understanding of the words used. This is evident in Plaintiff's proposed construction of the "tilt valve." According to Plaintiff, the term "tilt valve" means:

> "a tilt valve is any valve that, when not otherwise constrained, opens when a portion of the valve (the valve stem) is tilted *or* displaced axially relative to a seal" (emphasis added)

By use of the word "or" and as argued in their supporting brief, Plaintiff's construction is not limited to valves that open when tilted. Valves that are opened by being displaced axially relative to a seal (i.e. moved up and down) are also included. See Plaintiff's Claim Construction Brief at pages 7-8. However, by using the word "or" to broaden the scope of "tilt valves," this construction becomes so broad that it would encompass valves that do not tilt.

Under Plaintiff's definition, a valve that is designed to open when displaced axially (i.e. an "up-down valve") would be covered because it satisfies the second prong of the "or" clause. If such an "up-down valve" was incapable of operating by tilting, it would still be covered under Plaintiff's proposed construction. Thus, a valve that could not tilt would be a "tilt valve" according to Plaintiff. Plaintiff's construction therefore impermissibly reads the word "tilt" out of the claim term "tilt valve." This would effect a redrafting of the claim limitation to be simply

3

a valve. However, "[n]othing in any precedent permits judicial redrafting of claims," as pointed out by Plaintiff itself in its claim construction brief, citing Becton Dickenson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 799 n.6 (Fed.Cir. 1990).

2. **Plaintiff has selectively cited the '064 patent specification citation so as to arrive at an overly-broad construction of the term "Tilt Valve"**

Plaintiff is correct in asserting in its opening claim construction brief (at Section 5.A., page 7) that "tilt valve can be readily understood from the intrinsic evidence." Plaintiff then directs the Court to language in the specification that describes a tilt valve as one that is designed to be opened "by tilting a portion of the valve (*i.e.*, the valve stem)," citing the '064 patent at Col. 1, lines 45-52, ("1:45-52"), and Col. 3, lines 39-43 ("3:39-43") but which can also "be opened when a portion of the valve is displaced axially relative to a seal" ('064 patent at 3:25-39). Defendants do not disagree with this definition as far as it goes.

Because Plaintiff selectively omits citations from the specification that more narrowly define the "tilt valve" of the patent in suit, it ends up proffering a construction that is overly broad. Specifically, Plaintiff neglects to inform the Court that the patent calls for a tilt valve that is generally known ('064 patent at 1:45-46), of the type widely used ('064 patent at 3:15), off the shelf ('064 patent at 5:36), and which may be cheaply and easily obtained ('064 patent at 5:38). These are additional limitations of the tilt valve of the patent in suit, necessary to meet the purported objects of the invention, which all relate to overcoming the high cost of prior art dispensing apparatuses.

Thus, a valve which is not designed to tilt but which can be forced to tilt is not a tilt valve. To put it another way, patentee's tilt valve is a tilt valve even though it is used in a non-tilt (i.e. up-and-down) fashion. An up and down valve, however, is not a tilt valve even if it could be used in a tilt fashion.

4

### 3. The patentee limited "tilt valve" to mean "a cheap, conventional, off-the-shelf valve of the type widely used in dispensing devices that is designed to open when the valve stem is tilted" to meet the Objects of the Invention

The specification of the patent in suit, in the Summary of the Invention at Col. 1, lines 13-19, describes several disadvantages of prior art dispensers. These disadvantages are 1) the high cost of components; 2) that the valve mechanism comprised a large number of separate parts that needed to be assembled together; and 3) that automatic assembly of such apparatuses was complicated and costly. An object of the patent in suit is to overcome one or more of these disadvantages. See the '064 patent at Col. 1, lines 20-23.

How does the patent in suit contemplate overcoming these disadvantages? By incorporating a conventional, off-the-shelf ('064 at Col. 5, line 36) tilt valve, cheaply and easily obtained ('064 at Col. 5, lines 36-39), of the type widely used in pressurized dispensers ('064 at Col. 3, lines 14-16). Only such a valve meets any of the stated objects of the invention. Plaintiff's construction of the term "tilt valve" to be "a valve that, when not otherwise constrained, opens when a portion of the valve (the valve stem) is tilted or displaced axially relative to a seal" - would broaden the claimed valve "tilt valve" so as to include valves that would not even address any of the patent's stated objectives of lower cost, ease of assembly and being an off-the-shelf item.

To allow the claimed invention to meet any of the patent's stated objectives, the Court should construe "tilt valve" in conformity with the way that term is used in the patent in suit: a cheap, conventional, off-the-shelf valve of the type normally used in dispensing devices, that is designed to be tilted, but which can be actuated vertically in the manner described in the patent in suit.

B. **Plaintiff's Proposed Construction of the "Sealingly Engageable" Limitation is Inconsistent with the Patent Specification and Subverts the Core Notice Function of Patent Claims**

Plaintiff proposes that the Court construe "a nozzle assembly sealingly engageable with the hinge assembly" to mean "a nozzle and any other components which may be connected to the nozzle, such as an end cap or actuator, the nozzle and other components being configured such that it can, in certain conditions, engage with the hinge assembly, for example, by means of the lever, and can form a seal.

Plaintiff's proposed construction is deeply flawed. It gives the words of this claim limitation meanings different from their plain and ordinary meanings and different from how those same words are used in the patent specification. Plaintiff's construction (and its explanation of its construction) of this limitation differs so markedly from what is actually recited in the claims, that to accept it would be to countenance a violation of the core notice function of patent claims.

    1.    **The Patentee claimed a nozzle assembly sealingly engageable "*with the hinge assembly.*" This limitation is not directed to and cannot encompass the function of the sealing (i.e., closing) of the valve**

In Plaintiff's opening claim construction brief, the phrase "sealingly engageable" is said to "assist in defining the functional relationship between the hinge assembly, the lever, the nozzle assembly and the valve during the opening and closing of the valve."[3]

This is simply too much freight for the claim language to carry. The claimed sealingly engageable relationship between the nozzle assembly and the hinge assembly neither recites nor refers to the valve or the lever in any way. Plaintiff is bound by the words of the claim – a nozzle assembly sealingly engageable with the *hinge assembly*. "Fairness and the public notice

---

[3] Last sentence of Section V.C.3 of Plaintiff's Opening Claim Construction Brief, page 12.

function of the patent law require courts to afford patentees the full breadth of clear claim language, and bind them to it as well." Tate Access Floors, Inc. v. Interface Architectural Resources, Inc., 279 F.3d 1357, 1367 (Fed. Cir. 2002).

### 2. The patentee did not claim a nozzle assembly sealingly engageable with the hinge assembly *by means of* the lever

In its opening claim construction brief, Plaintiff variously states that the nozzle assembly is engageable with the hinge assembly *through*"[4] or "*by means of*"[5] or "*by way of*"[6] the lever. However, the patentee did not claim engagement *through* or *by means of* anything; the patentee claimed a nozzle assembly sealingly engageable with the hinge assembly. As shown below, the patentee's use of "engage" throughout the patent teaches that the word engagement, in the context of the patent in suit, requires direct contact between the two components so engaged, *not* "by means of" any other interposed element.

In the claims of the patent in suit, the nozzle assembly is recited as being engagable "with the hinge assembly," not "with the lever". By tacking on "*through the lever*" to the words actually used of the claim, Plaintiff's construction in effect redrafts the language of the claim. However, as Plaintiff itself pointed out in its Opening Claim Construction Brief (in Section III.8, on page 4) a court may not – in the course of its claim construction - redraft the claims. Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1357 (Fed. Cir. 1999).

---

[4] Section V.C.3 of Plaintiff's Opening Claim Construction Brief, four lines from the bottom of page 11.
[5] Section V.C.4 of Plaintiff's brief, last sentence of that section, on page 13.
[6] Section V.C.3 of Plaintiff's brief, last paragraph of that section, page 12.

7

### 3. Because the patentee consistently used "engage" in the patent specification to mean direct contact between the components so engaged, it must have the same meaning in the claims

As set forth in Defendants' opening Claim Construction Brief, the plain and ordinary meaning of "a nozzle assembly sealingly engageable with the hinge assembly" requires there to be direct contact between the nozzle assembly and the hinge assembly. See Defendants' Opening Claim Construction Brief Section IV.C, page 14 *et. seq.*. This interpretation is more than merely consistent with the language of the specification; it is what the specification mandates. When the patentee uses variants of the word "engage" in the specification, the components "engaged" with one another are in direct contact with one another.

In Col. 1, lines 54-57 of the '064 patent, the patentee discloses that it is preferable in his invention that "the mounting cup is provided with a corresponding flange portion adapted to engage with the rolled flange portion of the container." "Engage" is used here to refer to direct physical contact between the two recited flange portions. This can be seen most clearly in Figure 4 of the '064 patent, where the flange portion 48 of the mounting cup is crimped around the rolled flange portion 48 of the container, thus holding the mounting cup and container together.

Again, at Col. 4, lines 47-54, the patent in suit explains how the "inner surface of the cylindrical extension 110 engages with a protruding part 41 of the grommet 38" Here, too, the components engaged with one another - the cylindrical extension 110 and the protruding part 41 of the grommet – are in direct physical contact each other. Figs. 1-7 graphically confirm this direct contact relationship, although it is not so easy to see.

Finally, at Col. 5, lines 18-22, the patentee describes how "[a]n external thread 116 is provided on the valve stem 30 which engages with a corresponding internal thread (not shown)

on the nozzle 80..." Here again, the meaning of "engages" is clear: the external and internal threads must be in direct physical contact with one another, since they are screwed together.

These examples repeatedly and unvaryingly show what the patentee means by "engage" and inform the Court how the word "engageable" (i.e., "able to engage") should be construed in the claims. Terms in a patent claim should be construed to have the meaning with which they are presented in the patent document. Merck & Co. v. Teva Pharms., USA, Inc., 347 F.3d 1367, 1371 (Fed.Cir. 2003)  The patentee used variants of the word "engage" throughout the specification in a manner consistent with its plain and ordinary meaning: to describe instances where there is direct contact between the components engaged with one another. The specification therefore teaches us that the proper contextual meaning of the word engage requires in direct contact with one another, *not* "through," "by means of" or "by way of" some other component or components interposed in between them, as Plaintiff suggests.

Indeed, using Plaintiff's approach, one can say that all of the parts of the pressurized container are engageable with one another, since they all interact or inter-support one-another through one or more of the parts. Plaintiff's approach has the effect of rendering the "engageable" relation of the claim limitation almost meaningless.

> 4. **The patent specification teaches that a sealing engagement is direct contact between the components so engaged, with a seal formed at the juncture of that direct contact.**

The Court is requested to look more closely at the '064 patent at Col. 4, lines 50-54. Here, it is disclosed that "the inner surface of cylindrical extension 110 engages with a protruding part 41 of the grommet 38 adjacent to the groove 40, to form a seal..." Thus, an engagement is disclosed between the cylindrical extension 110 and the protruding part 41 of the grommet 38. As shown above, this implies direct contact between the cylindrical extension 110

9

and the protruding part 41. Furthermore, it is disclosed that this engagement (i.e., this contact) causes a seal to form. The seal is formed at the juncture of the direct contact between the cylindrical extension 110 and the protruding part 41. In other words, the cylindrical extension 110 is *sealingly engaged* with the protruding part 41 of the grommet 38. It is here, if anywhere, that the patent specification teaches what is meant by a sealing engagement: two components in direct contact with one another, with a seal formed at the juncture of that direct contact.

This teaching is in perfect accord with Defendants' proposed construction of "sealingly engageable" which requires that the components in such a relationship come into direct contact with one another, and that a seal is formed at the juncture of such direct contact.

In contrast, Plaintiff points to no part of the specification that actually uses the words "seal" and "engage" in support of its proposed construction of "sealingly engageable." Indeed, Plaintiff cannot, because there are none to be found.

### 5. The language of the rest of Claim 1 itself dictates that "engageable" elements must be able to come into direct contact with one another

Plaintiff's proposed construction of the "sealingly engageable" limitation is not only inconsistent with the specification; it is inconsistent with the very words that follow in the claim. The entire claim phrase is "a nozzle assembly sealingly engageable with the hinge assembly and provided with *an internal thread engaged with the external thread* of the valve stem. ('064 at 663-65, emphasis added). As discussed above, the specification discloses support for this thread engagement at 5:18-22. Neither party disputes that the respective internal threads of the nozzle assembly and the external threads of the valve stem must be in direct contact with one another when they are engaged with one another, as recited in the claim.

10

"Engageable" and "engage" as used in this claim phrase must be construed so as to be consistent with one another. Claim terms are presumed to be used consistently throughout the patent. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir.,2005); see also Callicrate v. Wadsworth Mfg., Inc. 427 F.3d 1361, 1371 (Fed. Cir.2005) (citing Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed.Cir.2001) ("[T]his court interprets claim terms consistently throughout various claims of the same patent.) Here, where two variants of the word "engage" appear in the same limitation of the same claim of the same patent, it is axiomatic that to be consistent, direct contact is required in both variants.

6. **The portions of the specification cited by Plaintiff do not support Plaintiff's proposed construction of the "sealingly engageable" limitation**

Plaintiff cites Col. 3, lines 12-52 in support of Plaintiff's contention that "the specification describes how the nozzle, during operation, engages the hinge assembly so as to seal against flow through the nozzle." Defendants respectfully disagree; the cited portion shows no such thing. The discussion of the operation of the valve in col. 3, lines 31-43 is entirely divorced from the description of the physical characteristics of the hinge assembly in col. 3, lines 43-52 of the cited portion. Indeed, the discussion at lines 31-43 does not reference the hinge assembly at all, let alone teach how the nozzle engages with the hinge assembly. The passage at col. 3, lines 31-43 teaches that the valve seals against flow through the nozzle, due to internal pressure of the container and the resilience of the rubber grommet. The valve opens when the valve stem is displaced. The hinge assembly is not a part of this relation, and is nowhere to be found in the portion of the passage discussing the sealing and unsealing of the valve.

While the second portion of the specification cited by Plaintiff, Col. 5, line 58 – Col. 6, line 11, actually does *mention* the hinge assembly, it does so only to describe movement of other

11

components relative to the hinge assembly. Neither a seal nor an engagement is recited in this portion, let alone one involving the hinge assembly, and certainly not any sealing engagement of the nozzle assembly with the hinge assembly.

Based on the intrinsic evidence as shown above, Plaintiff's proposed construction is simply untenable. The Court should construe "a nozzle assembly sealingly engageable with the hinge assembly" as Defendants have proposed, and in accord with the plain and ordinary meaning of the words and teaching of the patent specification, to require direct contact between the nozzle assembly and the hinge assembly, with a seal being formed at the juncture of that direct contact.

### C. Plaintiff's Proposed Construction of the "Actuator Portion" Claim Limitation is Broader Than the Disclosure of the Patent Specification

#### 1. Plaintiff's omission of limiting portions of the patent specification leads to an overly broad construction the "actuator portion"

Plaintiff would have the Court construe "actuator portion" to mean any surface at the base of the nozzle assembly that receives the bearing portion of the lever. (See Plaintiff's Claim Construction Brief at page 15, Section V.E.) Yet the sole portion of the specification Plaintiff cites in support of its proposed construction - Col. 4, lines 13-15 - recites that the actuator portion "is provided with a cam surface." In fact, every single description of the actuator portion in every disclosed embodiment in the patent in suit recites a cam surface. See the '064 patent at Col. 1, lines 34-36; Col. 1, lines 58-61; Col. 4, lines 13-17; Col. 4, lines 40-41; Col. 5, lines 64-65; Col. 6, lines 12-31 and Col. 6, lines 49-51. The construction of this claim limitation should accordingly be limited to require a cam surface, which is the only surface the inventor described.

12

Inpro II Licensing S.A.R.L. v. T-Mobile USA Inc. (2006 U.S.App. LEXIS 11675) is instructive on this point.[7] There, the Federal Circuit recently affirmed a district court construction of the term "host interface" to mean a "direct parallel bus interface," which was the only host interface described in the specification. In support of affirming this construction, the Federal Circuit pointed to Netword, LLC. V. Centraal Corp., 242 F.3d 1347, 1352 (Fed.Cir. 2001) for the proposition that the claims cannot "enlarge what is patented beyond what the inventor has described as his invention." Plaintiff violates this rule of claim construction by enlarging the limitation "actuator portion" beyond what the inventor described as his invention, i.e., a cam surface at the base of the nozzle assembly.

    2.    **The patent in suit teaches that it is positioning of the cam surface relative to the lever that moves the lever into or out of position for operation.**

In the patent in suit, multiple embodiments of the alleged invention are disclosed. In each embodiment, the actuator portion of the nozzle assembly is described as having a cam surface. Screw threads for engaging the nozzle to the valve stem are disclosed (to form a seal, as discussed above, in reference to Col 5, lines 17-21, and to secure the nozzle to the valve stem, in Col. 4, lines 31-46, discussed below), but there is no disclosure of using these screw threads to raise or lower the entire nozzle assembly so as to place it into or out of an actuating (i.e., operable) position, respectively.

None of the drawings of the patent in suit show the use of a screw thread to engage the nozzle with the valve stem, but the alternative embodiment at Col. 4, lines 31-46 does make such a disclosure. In that embodiment, however, the sole function of screw threads is to secure the

---

[7] This case is attached as Exhibit 1 to the Declaration of Stephen Chin in Support of Plaintiff's Memorandum of Law in Opposition to Plaintiff's Memorandum on Claim Construction for U.S. 6,685,064.

13

nozzle assembly to the valve stem. Col. 4, line 34-36. To place this embodiment in position for operation, the patent teaches that the user must continue to turn the nozzle in the same, "screwing-on" direction, causing both the nozzle and valve stem to rotate together (i.e., with their respective threads remaining fully engaged with one another) until, due to the location of the cam on the surface of the base of the nozzle, the nozzle is in either open to closed positions. Col. 4, lines 31-46.

> 3. **There is no teaching or suggestion in the patent in suit to screw the nozzle assembly up the threads of the valve stem in order to place the lever into position for operation.**

There is no notice in the patent in suit of any way, other than with a cam, to raise the lever into an operating position. Nowhere in the teachings of the patent in suit, and nowhere in any embodiment shown or described, does rotation of the nozzle assembly cause the nozzle assembly to travel up the threads of the valve stem so as to place nozzle assembly into an open, operable position. Thus, such a scope is beyond the reach of claims of the patent in suit. "The words of patent claims have the meaning and scope in which they are used in the specification and prosecution history. " Kinik Co. v. Int'l Trade Comm'n., 362 F.3d 1359, 1365 (Fed. Cir. 2004).

It was well-known in the prior art that one could place a lever-operated dispensing apparatus in position for operation by raising the entire nozzle or actuator portion so as to raise the surface upon which the lever comes to bear.[8] However, such a disclosure simply is not encompassed by the specification or claims of the patent in suit. In the invention of patent in suit, the only (and repeated) disclosure is that in order for there to be actuation, the nozzle

---

[8] Such an arrangement is disclosed, for example, in both Snell U.S. Patent No. 5,040,705 and Frutin U.S. Patent No. 4,826,054, each cited on the face of the patent in suit.

assembly must be rotated such that lever is in direct contact with a raised portion – i.e., the cam surface – of the actuator portion of the nozzle assembly. The employment of cammed surface on the actuator portion of the nozzle assembly of patent in suit is a key inventive feature of the patent in suit. The patentee chose to disclose this single way of placing the inventive apparatus in position for operation. Unless the Court chooses to "enlarge what is patented beyond what the inventor has described as his invention," Netword, 242 F.3d at 1352, it is also a required feature of the actuator portion of the nozzle assembly in all claims of the patent in suit.

### III.   SUMMARY AND CONCLUSION

Based on the foregoing, Defendants respectfully submit that Plaintiff's proposed constructions of the claim limitations "tilt valve", "nozzle assembly sealingly engageable with the hinge assembly" and "the nozzle assembly... including an actuator portion provided with a surface which cooperates with the lever bearing portion" are not in keeping with Federal Circuit precedent, with the notice function of patent claims, or with the intrinsic evidence.

For the reasons provided herein and in Defendants' Opening Claim Construction Brief, Defendants respectfully request that the Court decline to adopt Plaintiff's proposed constructions, and instead adopt those offered by Defendants.

Date: July 28, 2006         By:         /s/ John G. Harris
                                        John G. Harris, Esq. (No. 4017)
                                        Reed Smith LLP
                                        1201 Market Street, Suite 1500
                                        Wilmington, DE  19801
OF COUNSEL:                             Tel. (302) 778-7500
                                        Fax (302) 778-7575

Lloyd McAulay, admitted *pro hac vice*
Stephen Chin, admitted *pro hac vice*
Reed Smith LLP
599 Lexington Avenue
New York, NY  10022
Tel. (212) 521-5400
Fax: (212) 521-5450

15