IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCEP LUSOL HOLDINGS LIMITED,   )
   )
      Plaintiff/Counterclaim Defendant,   )
   )
      v.   )     Civil Action No. 05-141-KAJ
   )
PERMATEX, INC., and ULTRAMOTIVE   )
CORPORATION,   )
   )
      Defendants/Counterclaimants.   )

**PLAINTIFF ROCEP LUSOL HOLDINGS LIMITED'S
BRIEF IN ANSWER TO DEFENDANT'S MOTION ON CLAIM
CONSTRUCTION FOR U.S. 6,685,064**

Respectfully submitted,

ROCEP LUSOL HOLDINGS LIMITED

DAVID P. PRIMACK (#4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Tel: 302-467-4224
Fax: 302-467-4201

ROBERT E. CANNUSCIO
Drinker Biddle & Reath LLP
One Logan Square, 18th & Cherry Streets
Philadelphia, PA 19103-6996
Tel: (215) 988-3303
Fax: (215) 988-2757

Attorneys for
ROCEP LUSOL HOLDINGS LIMITED

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

I.    NATURE OF THE CASE AND OF PROCEEDINGS .................................... 1

II.   SUMMARY OF LEGAL ARGUMENTS ON CLAIM CONSTRUCTION ................... 1

III.  STATEMENT OF FACTS ............................................................................ 4

IV.   PROPER CONSTRUCTION OF THE CLAIMS OF THE PATENTS  IN SUIT ........... 5

      A.    Defendant's Construction of "tilt valve" Improperly Reads Limitations
            into the Claim ................................................................................ 5

      B.    "Hinge Assembly" ............................................................................ 7

      C.    Defendants Construction of "a Nozzle Assembly Sealingly Engageable
            with the Hinge Assembly" is Improperly Narrow ................................. 7

      D.    Defendant's Construction of  the "Nozzle Assembly being Rotatable
            Between Open and Closed Positions" is Not Supported by the Intrinsic
            Evidence ........................................................................................ 12

      E.    Defendants' Construction of "an Actuator Portion Provided with a
            Surface" Improperly Reads in the Term "Cam" into the Claim .......... 13

V.    CONCLUSION ........................................................................................ 18

# TABLE OF AUTHORITIES

## CASES

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443
  (Fed. Cir. 1986)................................................................................................9

*Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) ......................3

*Biogen, Inc. v. Berlex Laboratories, Inc.*, 318 F.3d 1132 (Fed. Cir. 2003)................14, 15

*Cultor Corp. v. A.E. Staley Manufacturing Co.*, 224 F.3d 1328 (Fed. Cir. 2000).......14, 15

*D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570 (Fed. Cir. 1985)...........................................17

*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327
  (Fed. Cir. 2003)...............................................................................................2

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111
  (Fed. Cir. 2004)...............................................................................................2

*Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855 (Fed. Cir. 1988) ...............2, 6

*Laitram Corp. v. Morehouse Indus.*, 143 F.3d 1456 (Fed. Cir. 1998)..............................15

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)..............................14

*Markman v. Westview Instruments*, Inc., 52 F.3d 967 (Fed. Cir. 1995),
  *aff'd*, 517 U.S. 370 (1996)................................................................................1, 2, 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005),
  *cert. denied*, 126 S. Ct. 1332 (2006)............................................................1, 2, 3, 8, 13

*Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999) .................3

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370 (Fed. Cir. 1999) ..................1

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ......................2

*Vitronics Corp. v. Conceptric Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...........................2, 3, 9

*Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999).....................15

## I.    NATURE OF THE CASE AND OF PROCEEDINGS

This case involves a claim for patent infringement.  Plaintiff Rocep Lusol Holdings Limited ("Rocep") is the owner of US Pat. 6,685,064 ("the '064 Patent"), which claims a novel dispensing apparatus.  Rocep has brought an action against Ultramotive Corporation ("Ultramotive") and Permatex, Inc. ("Permatex") (collectively, "Defendants") for infringement of the '064 Patent.

Both parties have filed opening briefs on claim construction.  Pursuant to the Scheduling Order, this answering brief is being timely filed in response to Defendants' opening brief on claim construction.

## II.    SUMMARY OF LEGAL ARGUMENTS ON CLAIM CONSTRUCTION

1.    Patent claims define the boundaries of the patented invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) *cert denied*, 126 S.Ct. 1332 (2006) (noting it is a "bedrock principle" of patent law that the claims delimit the scope of the patentee's rights) (citations omitted).

2.    Construction of patent claims is a matter of law for the court.  *Markman v. Westview Instruments Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  It is the court's role to determine the proper meaning and scope of the claims, always using the language of the claims as the touchstone.  *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1375 (Fed. Cir. 1999).  As the Federal Circuit explained,

> In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his

invention. The terms used in the claims bear a "heavy presumption" that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art. Moreover, unless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art.

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201-02 (Fed. Cir. 2002) (internal citations omitted).

3.     "[T]he words of a claim 'are generally given their ordinary and customary meaning,'" (citations omitted) *Phillips*, 415 F.3d at 1312, which is the meaning they would have to a person of ordinary skill in the art at the time of the invention. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003).

4.     To determine the ordinary and customary meaning, the court must initially "consider three sources: the claims, the specification, and the prosecution history." *Markman,* 52 F.3d at 979 (*quoting Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). The three sources are often referred to as "intrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

5.     Analysis of the intrinsic evidence begins with the claims themselves, *Phillips*, 415 F.3d at 1314, and looks at the context in which a claim term is used. The context is instructive because it puts the claim term in its proper setting.

6.     With respect to at least one of the claim terms in dispute, the Defendants arguments amount to an assertion that a preferred embodiment must be read as a claim limitation. That is not the law. *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a

specification, are not claim limitations.") (*citing SRI Int'l. v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (*en banc*)).

7.    The primary focus in claim construction is on the intrinsic evidence. However, the Federal Circuit has authorized district courts, when necessary, to rely on evidence external to the patent and prosecution history (*e.g.*, expert reports and testimony, dictionaries, treatises). *Phillips* 415 F.3d at 1317. Such evidence is called "extrinsic evidence." A court may use extrinsic evidence to assist it in understanding technical concepts in the claims, or as evidence of how those skilled in the art would understand the claim language. *Vitronics*, 90 F.3d at 1584.

8.    While courts may rely on extrinsic evidence, it is generally considered less reliable than intrinsic evidence. *Phillips* 415 F.3d at 1318-1319. Moreover, "[if] an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term . . . it is improper to rely on extrinsic evidence." *Vitronics Corp.*, 90 F.3d at 1583. Consequently, a court should discount extrinsic evidence that contradicts or is inconsistent with the intrinsic evidence. *Phillips* 415 F.3d at 1319.

9.    While it is the court's duty to construe the claims, the court may not – in the course of its claim construction – redraft them. *Process Control Corp. v. HydReclaim Corp.* 190 F.3d 1350, 1357 (Fed. Cir. 1999); *see also Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 n.6 (Fed. Cir. 1990) ("Nothing in any precedent permits judicial redrafting of claims."). Although the court may (and should) refer to the specification and other intrinsic evidence in order to interpret claim ambiguities, the court must guard against importing extraneous matter from the specification or other source when the claim language does not *require* it.

## III.    STATEMENT OF FACTS

There is one patent in suit: US Pat. 6,685,064 ("the '064 Patent"). The '064 Patent

includes 9 claims. Of those claims, only claims 1, 2 and 6 are currently asserted against the

Defendants' allegedly infringing products.

The claims of the '064 Patent were allowed without a substantive rejection by the

examiner at the USPTO. In other words, after examining the application in general, and the

claims specifically, the examiner found the claims of the '064 Patent met all of the requirements

for patentability (novelty, non-obviousness, proper written description, etc.). Specifically, the

examiner noted the following in his "statement of reasons for allowance:"

> the prior art fails to disclose or render obvious a dispensing
> apparatus in combination with the other claim limitations of claim
> 1: "a nozzle assembly sealingly engageable with the hinge
> assembly and provided with an internal thread engaged with the
> external thread of the valve stem, the nozzle assembly being
> rotatable relative to the hinge assembly and the lever between open
> and closed positions of said nozzle assembly and including an
> actuator portion provided with a surface which cooperates with the
> lever bearing portion such that in the open position of said nozzle
> assembly operation of the lever causes movement of the actuator
> portion to open the valve and permit flow of the product out of the
> apparatus."

[Document No. 61, Exhibit D-12 to D-13][1] Along with this statement, the examiner made minor

amendments to the specification for clarity purposes, but did not find it necessary to amend the

claims for clarity or any other purpose. [Document No. 61, Exhibit D-12]

---

[1] The "Document No." corresponds to the document number on the Court docket.

## IV.    PROPER CONSTRUCTION OF THE CLAIMS OF THE PATENTS
IN SUIT

The claim construction proposed by the Defendants for the patent in suit is defective because it overlooks the plain meaning of the claim terms, is at odds with the intrinsic evidence, and/or ignores established law on claim construction.

### A.    Defendant's Construction of "tilt valve" Improperly Reads Limitations into the Claim.

Defendants propose a construction of the term "tilt valve" that is overly narrow.  That is, despite the Defendants' assertion that their interpretation of tilt valve does not improperly import structural limitations into the claims, as set forth below, it does just that.

Claim 1 of the '064 Patent recites a "tilt valve."  It does not recite a tilt valve "of the type widely used at the time of filing."  It does not recite an "off-the-shelf" tilt valve.  It does not even recite a "conventional" tilt valve.  It simply recites a "tilt valve."

A tilt valve, as understood by one skilled in the art, is simply a valve that opens when tilted or depressed, which is a meaning that the specification clearly supports.  Figures 4 and 7a in the '064 Patent, and the text in the specification corresponding to those figures, show and described, respectively, how a "tilt valve" operates.  The Figures show two directions, depicted by arrow A and arrow B, in which the valve stem can be displaced so as to open the valve. When the valve stem is pushed in the direction of arrow A, the valve is displaced axially relative to a seal, thereby opening the valve.  *See* '064 Patent, col. 3, ll. 31-39.  When the valve stem is pushed in the direction of arrow B, the valve stem is tilted, thereby opening the valve.  *See* '064 Patent, col. 3, ll. 39-43.  The term "tilt valve" is also discussed in Col. 1, lines 45-52 wherein tilt valves are described as operating "by tilting of a hollow central stem which is resiliently held on a mounting cup by a rubber grommet."  Thus, the term "tilt valve," as recited in the claims and

used consistently throughout the specification, is simply any valve that can be opened by lateral displacement of a valve stem or by lateral and axial displacement of a valve stem.

The Defendants' narrow interpretation of tilt valve as a "conventional, off-the-shelf tilt valve" is not supported by the specification. On the contrary, the specification merely describes the tilt valve as one that is well known in the art. The specification indicates that the tilt valve is preferably a conventional or off-the-shelf tilt valve. One passage of the specification (col. 3, 11.14-16) notes that "[t]he valve is a valve **of the type** widely used in pressurised dispensers and operated by tilting the valve stem." (emphasis added). The phrase "of the type" means similar to. Thus, the recited tilt valve does not have to be a valve that **is** widely used in pressurised dispensers as the Defendants contend, but rather merely similar in function and operation to one of the widely used valves (*i.e.*, a valve that dispenses when tilted). The Defendants, however, assert that the preferred embodiment must be read as a claim limitation. That is not the law. *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.") (*citing SRI Int'l. v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (*en banc*)). Defendants' reading of the terms "conventional" and "off-the-shelf" into the claim are adding limitations that are not called for nor required by the claims. Thus, Defendants use of such terms is at odds with the law.

The term "tilt valve" should be interpreted as described in the specification and as understood by those skilled in the art, that is, a valve that, when not otherwise constrained, opens when the valve stem is tilted. Thus, the Court should not adopt the interpretation proffered by the Defendants.

**B.    "Hinge Assembly"**

Based on the opening briefs by both parties, the parties appear to be in substantial agreement as to what "hinge assembly" means, that is, a hinge that is attached to the container and to which another component is pivotally connected.

**C.    Defendants Construction of "a Nozzle Assembly Sealingly Engageable with the Hinge Assembly" is Improperly Narrow.**

Both parties agree that to properly interpret the claim term, it should be broken up into it constituent parts: "nozzle," "nozzle assembly," "sealingly engageable with," and "hinge assembly." The parties are in substantial agreement with regards to "nozzle," "nozzle assembly," and "hinge assembly." However, the parties disagree considerably on how the Court should construe "sealing engageable with."

The Defendants assert that its interpretation is dictated by the "plain contextual meaning of the words." However, the Defendants actually ignored the *contextual* meaning of the words.[2] That is, instead of viewing the words in the context in which they are used in the claims, specification, and the prosecution history, the Defendants piece together multiple sources of extrinsic evidence in what can only be described as an advocacy-induced hindsight interpretation. That approach is improper. *Markman*, 52 F.3d at 979 (*quoting Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)) (to determine the ordinary and customary

---

[2]    In fact, the Defendants admitted as much in their Memorandum in Support of Defendants' Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,685,064. In Section IV. B. of that memorandum the Defendants assert that the claims would be invalid under 35 U.S.C. §112 under *their own* claim interpretation because there is no support in the intrinsic evidence. An interpretation that is chosen so as to be unsupported by the specification is simply the wrong interpretation.

meaning, the court must initially "consider three sources:  the claims, the specification, and the prosecution history.")

The first source of extrinsic evidence upon which the Defendants rely is a dictionary definition of "engage" which includes no less than twenty-eight varying definitions.  The Defendants then expand one of the definitions into a definition of "engageable" (the Defendants' dictionary definition of engageable being "able to engage").  The Defendants attempt to construe "sealingly" in a similar manner; adapting the dictionary definition of "seal" (which had even more varying definitions) to reach a proposed definition of "sealingly."  Then, to support their interpretation, the Defendants turn to another extrinsic source and attempt to apply a definition of "engaging"[3] from an unrelated litigation involving an unrelated patent.[4]  The Defendants' approach is improper.

Although the Federal Circuit has authorized district courts to consider extrinsic evidence, *see Phillips* 415 F.3d at 1317 (noting that the primary focus in claim construction is on the intrinsic evidence, but that district courts are authorized, when necessary, to rely on evidence external to the patent and prosecution history (*e.g.*, expert reports and testimony, dictionaries, treatises)), a court's reliance on the extrinsic evidence should not come at the expense of the intrinsic evidence.  *See Phillips* 415 F.3d at 1318-1319 (finding that while courts may rely on

---

[3]  Even if the unrelated litigation involving an unrelated patent were deemed relevant, the court in that litigation merely provided a definition of "engaging."  It did not define the term "engageable," let alone the term "engageable" as modified by the term "sealingly" as recited in the claims of the '064 Patent.

[4] The patent in that litigation was directed to a game call apparatus.  One skilled in the art of game call apparatus would not be the same as one skilled in the art of dispensing containers.  Furthermore, there is no basis to assume that terms used in different fields of technology would have the same meaning.  To assume so is tantamount to venturing afield from an already extrinsic world.  This is not what is supposed to be done in a proper claim construction.

extrinsic evidence, it is generally considered less reliable than intrinsic evidence); *Vitronics Corp.*, 90 F.3d at 1583 (finding if "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term… it is improper to rely on extrinsic evidence.") Defendants have relied extensively on extrinsic evidence in an attempt to draw a narrow (and obviously favorable) interpretation. However, they have done so to the detriment of the claim language and the intrinsic evidence as a whole.

As detailed in Section V.C. of Plaintiff Rocep Lusol Holdings Limited's Memorandum on Claim Construction for U.S. 6,685,064, the intrinsic evidence provides ample support for properly construing the claims terms. In addition, the examiner, who is assumed to possess the necessary expertise in interpreting the references and familiarity with the level of skill in the art, *see Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986) (*citing American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir.), *cert. denied*, 469 U.S. 821 (1984)), included the language "sealingly engageable with" in his reasons for allowance, thereby acknowledging that there is ample support in the specification for the phrase. [Document No. 61, Exhibit D-12 to D-13] Therefore, Defendants resort to extrinsic evidence to construe the claims without any reference to or even starting with the intrinsic record is improper.

Moreover, even if dictionary definitions and definitions from unrelated patents could be used in that case, such definitions would not properly capture the context in which the terms are used in the claims of the '064 Patent absent some tie-in. The Defendants however do not provide any such tie-in or correlation. The Defendants correctly point out that "sealingly" modifies "engageable" in the present claims. What the Defendants overlook is that an engagement can be direct (*i.e.*, element one to element two) or indirect (*i.e.*, element one to intermediary to element

two).  Without explaining how or why, the Defendants read the word "direct" into their

definition, then go on to interpret the claim in a way that supports that reading.  See, Defendants'

Opening Brief, page 16 where the Defendants argue that the nozzle assembly and hinge

assembly are "the direct and only participants" in the sealing engagement.  The claims nor

specification mandate such a conclusion.  Yet, the Defendants assume that conclusion and carry

their interpretation on from there.  As a result, the Defendants spend a considerable amount of

discussion based on the erroneous conclusion that the hinge assembly and the nozzle assembly

*must* be in *direct* contact and are the only elements that can be.  Neither the term "direct" nor the

term "directly" appear in the claims or in the specification.  Consequently, to require a direct

engagement, as the Defendants suggest, would require that the Court rewrite the claims by

importing claim limitations that are found nowhere in the intrinsic evidence.  Such a practice is

improper and should not be followed by the Court.

A suitable analogy can be found in a car.  When we move the stick shift from Park to

Drive, we "engage" the transmission.  There is, however, no "direct" engagement between the

stick shift and the transmission.  Instead, a series of interconnected linkages cooperate with one

another to provide the engagement.  Similarly, in the present invention, there is nothing in the

claim or specification that requires a direct engagement between the hinge assembly and the

nozzle assembly.  The language of the claim only requires that there be a connection in some

manner.

During his deposition, Bernard Frutin explained the differing types of engagement and sealing provided in the two dispenser embodiments described in the '064 Patent.[5] In one embodiment, which included cams and other components to provide for sealing, Mr. Frutin explained that the seal was needed to provide additional resistance by compressing the rubber grommet. [Exhibit C-4, l. 3 to C-8, l. 7][6] That embodiment did not apply to the interpretation of the claims in the '064 Patent in as much as it did not relate to the screw embodiment.[7] Mr. Frutin went on to explain that the sealing engagement in the dispenser embodiment that uses a screw for attaching the nozzle assembly to the valve stem as occurring between the hinge assembly, lever and nozzle assembly as they operate to transition the valve from open to close positions. [Exhibit C-1, l. 12 to C-3, l. 15; and C-10, l. 2 to C-11, l. 4] Thus, Mr. Frutin clearly explained the distinct operation and sealing engagement described in the '064 Patent.

Finally, the Defendants spend several pages attacking a claim interpretation that they attribute to Rocep. However, the claim interpretation they attack is not Rocep's; rather it is an interpretation fabricated by the Defendants' simply for the purposes of attacking it. This fabricated interpretation is not merely a slight deviation from Rocep's interpretation. Instead,

---

[5]  The '064 Patent described two different dispenser embodiments. The first embodiment uses a cam as part of the actuator that produces the opening and closing of the valve. That embodiment does not include any threaded connection between the nozzle and the valve stem. The second embodiment includes a threaded connection between the valve stem and nozzle to set the amount of opening of the valve. Only the second embodiment is covered by claim 1 of the '064 Patent.

[6] Exhibits that were not previously filed with Rocep's opening briefs are included in an appendix corresponding to Rocep's three answering briefs.

[7]  The cam embodiment is claimed in a separate patent - U.S. Patent No. 6,820,777. The '064 Patent and U.S. Patent No. 6,820,777 are related applications that share a common specification. The '777 patent is referred to as a "divisional" application because it claims a different invention (*i.e.*, the cam embodiment) from the invention claimed in the '064 Patent.

there are significant differences between the fabricated interpretation and Rocep's interpretation. For example, the fabricated interpretation reads the word "lever" into the claim and then argues that the lever disengages from the nozzle assembly.

In sum, Defendants' assertions regarding the fabricated interpretation amount to a twisting of Rocep's claim interpretation into a certain image and then an argument that this image is illogical. This is simply not right. Unlike Defendants' claim interpretation (which the Defendants admit is not supported by the '064 Patent), Rocep's interpretation is clearly supported and based on intrinsic evidence.

Based on the foregoing, Rocep respectfully submits that the Defendants' claim construction of "sealingly engageable" is not proper and should not be adopted by the Court.

**D.    Defendant's Construction of the "Nozzle Assembly being Rotatable Between Open and Closed Positions" is Not Supported by the Intrinsic Evidence.**

Citing passages in the specification of the '064 Patent, the Defendants assert that the specification teaches a nozzle assembly having only a single open position. While the cited passages do indeed discuss a single open position, that discussion relates to only one embodiment of the invention, an embodiment protected by a related patent.[8] What the Defendants appear to have overlooked is the passage in the specification of the '064 Patent that states:

> Although FIGS. 1 to 7 show a simple camming surface in which there are two positions, a closed position in which the valve is fully closed and the dog cannot locate in the slot, and an open position in which the valve is fully open and the dog can locate in the slot, *it is in the scope of the present invention to provide a more sophisticated camming surface, which may provide intermediate*

---

[8]   As discussed above, U.S. Patent No. 6,820,777 claims the "cam embodiment." The cam embodiment includes distinct open and closed positions.

*raised surfaces*, whose height is between that of the depression 98 and highest raised surface 96. Further slots may be provided in flange 66 corresponding with the intermediate camming surfaces, *so that the valve may be actuated in one or more intermediate, partially open positions*. Alternatively the dogs 112 and flange 66 may be omitted, thereby simplifying the operation of the apparatus *so that the valve can be actuated in any rotational position of the nozzle, the degree of rotation determining the extent to which the valve will open when actuated*.

'064 Patent, col. 6, ll. 12 – 28 (emphasis added). In other words, despite the Defendants'

implication that the specification discloses a nozzle assembly having only one open and one

closed position, the above passage from the specification clearly discloses that the nozzle

assembly can have multiple open positions. That disclosure undermines the Defendants

interpretation of the claim term and supports Rocep's interpretation that the nozzle assembly can

rotate "to any desired position between open and closed positions." Because the Defendants'

claim construction is at odds with the intrinsic evidence, the Court should not adopted the

Defendants' proffered construction.

E.    **Defendants' Construction of "an Actuator Portion Provided with a Surface" Improperly Reads in the Term "Cam" into the Claim.**

It is well settled that the scope of the invention is defined by the claims. *See Phillips*, 415

F.3d at 1312 (noting it is a "bedrock principle" of patent law that the claims delimit the scope of

the patentee's rights) (citations omitted). As initially filed, Claim 1 recited an actuator portion

provided with a cam surface. However, as part of a preliminary amendment made before

prosecution of the application commenced, the term "cam" was deleted to cover a particular

embodiment of the invention disclosed in the '064 Patent where the raising of the lever was

facilitated by the threaded engagement of the valve stem and the nozzle, and not by the cam

surface. [Document No. 61, Exhibit D-35 to D-39] As discussed above, a divisional application,

which issued as U.S. Patent No. 6,820,777, included claims specifically directed to a separate

embodiment in the '064 patent that included a cam as part of the actuator. Claim 1 in the '064 Patent was amended prior to examination to expressly exclude the cam from the actuator and include the threaded connection. Hence, the claim as presented in the application for examination captured an embodiment where the threaded engagement of the valve stem and the nozzle rendered a cam surface on the actuator unnecessary. As noted in the preliminary amendment, the specification supports that interpretation. [Document No. 61, Exhibit D-37]

The Defendants allege, however, that because the specification repeatedly discusses the surface as a cam surface that the court should ignore the broad interpretation and construe the term narrowly. This approach is improper for at least the following reasons.

First, the specification explicitly notes that "[m]odifications and improvements may be made to the foregoing without departing from the scope of the invention." *See* '064 Patent, Col. 6, ll. 43 – 44. Consequently, the specification can support an interpretation that is not explicitly disclosed in the specification, especially when that construction is explicitly disclosed within the plain meaning of the claims.

Second, the Defendants rely on several cases for the proposition that the disclosure of only a single embodiment, or the disclosure of a narrowing term in the Summary of the Invention section of the patent compels the court to read the claims to cover only that single embodiment or that narrowing term. Reliance on those cases is misplaced with respect to '064 Patent. In each of those cases, the court construed terms narrowly not merely because the specification disclosed only a single embodiment or a narrowing term in the Summary of the Invention, but because there were other specific reasons dictating the narrow construction. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906-908 (Fed. Cir. 2004). For example, in *Biogen* and *Cultor*, the specification of the subject patents included express limiting definitions limiting

the claim terms. In addition, during the prosecution of those patents, arguments were made over the prior art that compelled the narrow claim construction. *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003); *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000). In *Laitram Corp.*, there was not merely a mention in the Summary of Invention of a restrictive reading of a disputed claim term, but rather a statement as to the benefits of the restrictive reading. In addition, as with *Biogen* and *Cultor*, during the prosecution of the subject patents, arguments were made over the prior art that compelled the narrow claim construction. *Laitram Corp. v. Morehouse Indus.*, 143 F.3d 1456, 1463 (Fed. Cir. 1998). Finally, in *Wang Labs.*, the court limited the claim as a whole and not just a single element of the claim. In doing so, the court notes that "[w]hether an invention is fairly claimed more broadly than the 'preferred embodiment' in the specification is a question specific to the content of the specification, the context in which the embodiment is described, the prosecution history, and if appropriate the prior art, for claims should be construed, when feasible, to sustain their validity." *Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999). In other words, factual considerations such as those discussed above with regard to the other cases must be considered.

None of these additional restrictive considerations were present in the '064 Patent. That is, the '064 Patent does not include an explicit definition or arguments limiting the surface to a cam surface. In addition, as discussed above, there are two embodiments set forth in the application, one that describes an initial embodiment that includes a cam to vary the actuation position of the lever, and a second that uses a thread to vary the actuation position of the lever. The first, which is the embodiment described generally in the Summary of the Invention, was claimed in U.S. Patent No. 6,820,777 as discussed previously. The second is the embodiment

claimed in the '064 Patent. Thus, the application contemplates two distinct embodiments, one

that includes a cam and one that does not.

Moreover, there is no evidence from the specification in its entirety that would compel

the Court to construe the term "surface" narrowly. In addition, there is no evidence from the

prosecution history that would compel the Court to construe the term "surface" narrowly.

Therefore, the Court should construe "surface" to mean "surface".

The Defendants also allege "that the cam surface of the actuator portion is one of the

patentee's major inventive contributions." This allegation demonstrates the Defendants

advocacy-induced blindness to the facts. As discussed previously, the examiner provided, in

relevant part, the following "statement of reasons for allowance:"

> the prior art fails to disclose or render obvious a dispensing
> apparatus in combination with the other claim limitations of claim
> 1: "a nozzle assembly sealingly engageable with the hinge
> assembly... *the nozzle assembly* being rotatable relative to the
> hinge assembly and the lever between open and closed positions of
> said nozzle assembly and *including an actuator portion provided
> with a surface* which cooperates with the lever bearing portion
> such that in the open position of said nozzle assembly operation of
> the lever causes movement of the actuator portion to open the
> valve and permit flow of the product out of the apparatus."
> (emphasis added).

[Document No. 61, Exhibit D-12 to D-13] Such a statement, which lacks the term "cam", clearly

illustrates that the party tasked with deciding patentability, *i.e.*, the patent examiner, did not

consider a "cam" surface to be "one of the patentee's major inventive contributions." The

examiner, instead, found that features, none of which includes a *cam* surface, provided the major

inventive contributions.

Furthermore, Claim 1 of the '064 Patent recites "an actuator portion provided with a

surface." As noted above, the term "cam" was expressly cancelled from the claim and, instead,

included in claim 3.  Although, as Defendants note, the doctrine of claim differentiation is not a rigid rule, it can provide guidance on how claim terms should be construed.  *See D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985) (applying the doctrine of claim differentiation to find that when some claims are broad and others narrow, the narrow limitations cannot be read into the broad claims).  The patentee intentionally excluded the term "cam" from claim 1 and included it in claim 3.  Applying the public notice function (strenuously advocated by the Defendants), a proper reading of the claims would require that the surface of the actuator portion of claim 1 must be interpreted broader than a cam surface.  Any other reading would not only be contrary to the language of the claims, but would render the change made by the Preliminary Amendment meaningless.  Such a conclusion would be counter to the clear prosecution history and the well settled law that a patent can claim inventions that are not limited to a specific embodiment.

Since the Defendants' claim construction of "actuator portion" fails on multiple counts, the Court should reject it.  The Court should, instead, construe the "actuator portion" as a surface which cooperates with the lever bearing portion such that in the open position of the nozzle assembly operation of the lever causes movement of the actuator portion to open the valve and permit flow of the product out of the apparatus.

## V.    CONCLUSION

Consistent with Federal Circuit precedent, Rocep's proposed claim term constructions [Document No. 61, Exhibit F] follow the intrinsic evidence of the patent and the relevant extrinsic evidence to their logical conclusion. The Defendants' interpretation does not. Therefore, the Court should not adopt Defendant's proposed claim terms as the legal basis for the factual determinations of infringement and claim invalidity.

Respectfully submitted,

ROCEP LUSOL HOLDINGS LIMITED

Date: July 28, 2006                BY:    /s/ David P. Primack
                                          DAVID P. PRIMACK (#4449)
                                          Drinker Biddle & Reath LLP
                                          1100 North Market Street, Suite 1000
                                          Wilmington, DE 19801-1254
                                          Tel: 302-467-4224
                                          Fax: 302-467-4201

                                          ROBERT E. CANNUSCIO
                                          Drinker Biddle & Reath LLP
                                          One Logan Square, 18th & Cherry Streets
                                          Philadelphia, PA 19103-6996
                                          Tel: (215) 988-3303
                                          Fax: (215) 988-2757

                                          Attorneys for
                                          ROCEP LUSOL HOLDINGS LIMITED