IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCEP LUSOL HOLDINGS LIMITED, ) <br> ) <br> Plaintiff/Counterclaim Defendant, ) <br> ) <br> v. ) <br> ) <br> PERMATEX, INC., and ULTRAMOTIVE ) <br> CORPORATION, ) <br> ) <br> Defendants/Counterclaimants. ) | Civil Action No. 05-141-KAJ |

**PLAINTIFF ROCEP LUSOL HOLDINGS LIMITED'S
BRIEF IN REPLY TO DEFENDANTS' ANSWER TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT</u>**

Respectfully submitted,

ROCEP LUSOL HOLDINGS LIMITED


DAVID P. PRIMACK (#4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Tel: 302-467-4224
Fax: 302-467-4201

ROBERT E. CANNUSCIO
Drinker Biddle & Reath LLP
One Logan Square, 18th & Cherry Streets
Philadelphia, PA 19103-6996
Tel: (215) 988-3303
Fax: (215) 988-2757

Attorneys for
ROCEP LUSOL HOLDINGS LIMITED

## **TABLE OF CONTENTS**

                                                                                           Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................1

      A.      Defendants' Misrepresent the Law Regarding Analysis of
              Concurrent Invalidity and Infringement Motions ................................1

      B.      Defendants' Unsupported Obviousness Argument is Not
              Sufficient to Overcome Summary Judgment of Infringement.............2

      C.      Defendants' Defense is Premised Entirely on Tilt Valve ....................4

      D.      Defendants Concoct a Baseless Dispute Regarding the Claim
              Element "Nozzle Assembly Sealingly Engageable with the
              Hinge Assembly"..................................................................................4

      E.      There is Adequate Support for Rocep's Infringement Analysis
              Without the Figures and Photographs...................................................5

      F.      Only One Product Needs to Infringe for Summary Judgment
              to be Proper..........................................................................................7

      G.      Defendants' Allegations That Rocep is Trying to "Run the
              Defendants out of business" Are Absurd............................................11

III. CONCLUSION.....................................................................................................12

## TABLE OF AUTHORITIES

### CASES

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343 (Fed. Cir. 2000) ..................................... 7

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551
    (Fed. Cir. 1995) ............................................................................................................. 8, 9

*Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821 (Fed. Cir. 1991) ............... 9

*Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306 (Fed. Cir. 2005) ............................................. 1

### STATUTES

35 USC § 271(a) ................................................................................................................. 7

I.  **INTRODUCTION**

Plaintiff Rocep Lusol Holdings Limited ("Rocep") filed an opening brief in support of a motion for summary judgment of infringement ("Opening Brief"). In response, Ultramotive Corporation ("Ultramotive") and Permatex, Inc. ("Permatex") (collectively, "Defendants") filed an answering brief ("Answering Brief"). This reply brief is being filed in response to the Defendants' Answering Brief.

Defendants' Answering Brief in part misrepresents the law, in part misrepresents the facts in an attempt to create alleged factual disputes where none exist. This muddying of the water and arm waving fails to overcome the simple and clear evidence which supports a finding of infringement.

II.  **ARGUMENT**

  A.  **Defendants' Misrepresent the Law Regarding Analysis of Concurrent Invalidity and Infringement Motions**

Despite Defendants' assertions to the contrary, the law is clear, a party may move for summary judgment of infringement. *See e.g., Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1317 (Fed. Cir. 2005) (granting motion for summary judgment of infringement). The law does, however, hold that a court need not reach the issue of infringement **if** the court determines a patent is invalid. Judicial economy dictates such. However, if a court, when faced with concurrent motions for summary judgment of invalidity and infringement, denies the motion for invalidity, the court must still consider the motion for infringement. The Defendants, in their Answering Brief, attempt to mislead the Court into believing that, just because invalidity is raised in the case, the issue of infringement is not proper from summary judgment. That is not the law.

In the *Union Carbide* case cited by the Defendants, the court stated that there was no need to consider a motion for summary judgment of infringement since the court held that the patent was invalid. Thus the motion was moot.

The Defendants argue that the Court should deny the motion for summary judgment of infringement simply because invalidity is raised and that a jury might reach that conclusion. The Defendants' twisted interpretation of the law would have the effect of eliminating all motions for summary judgment of infringement when a defense may be present.

The law is clear, if the Court denies the Defendants motion for summary judgment of invalidity, the Court must consider Rocep's motion for summary judgment of infringement.

The Defendants do not present any factual evidence in their Answering Brief to establish invalidity. Instead, the Defendants point to their co-pending brief.[1] Thus, the Defendants "invalidity" argument as set out in their Answering Brief is not sufficient to deny Rocep's motion.

### B. Defendants' Unsupported Obviousness Argument is Not Sufficient to Overcome Summary Judgment of Infringement

Throughout this litigation, the Defendants have done a lot of hand waving that the '064 Patent is invalid. However, the Defendants have not supported this hand waving with facts. With the exception of the Defendants analysis of '010 Publication[2] where the Defendants finally provided a detailed argument, albeit a losing one, regarding invalidity, that approach continues.

---

[1] The Defendants suggest that the '064 patent may be invalid based on obviousness. However, the Defendants never raised that issue in their summary judgment brief on invalidity, and present no evidence in their Answering Brief to this motion, much less clear and convincing evidence, to support such a claim. Thus, the Defendants' argument is nothing more than mere smoke.

[2] See Defendants' Opening Brief on Invalidity.

In their Answering Brief, Defendants cite a single reference, US Patent 5,040,705 to Snell ("Snell"), which the Defendants again fail to mention to the Court was reviewed by the patent examiner during prosecution of the '064 Patent. Instead, the Defendants simply state that the '064 Patent is invalid in view of this reference because this reference renders the '064 Patent obvious. The Defendants fail to provide any support for this contention. They fail to identify specific passages of the reference that are relevant to the present suit. They fail to show how this reference relates to the claims of the '064 Patent. Instead, the Defendants simply make the baseless statement that "the patent in suit should inevitably be found invalid." This by no means clear and convincing evidence as they are required to establish to succeed on a motion for invalidity.

The Defendants also state that non-public activities by Christian Scheindel of Ultramotive are evidence that '064 Patent is invalid. But, again, the Defendants fail to provide sufficient details to support their contention. The Defendants assert that there was a confidential offer for sale before the critical date of the '064 Patent of a product that was "substantially similar to the Accused Product", but they have not provided any further substantive details with regard to the product.[3] Again, this lack of evidentiary support is no grounds for a denial of summary judgment.

In sum, the Defendants allege invalidity as a defense, but fail to provide any evidence, much less clear and convincing evidence, that invalidates the claims of the '064 Patent. These

---

[3] Interestingly, well after that alleged "offer for sale", the Defendants filed a patent application covering the Accused Product, but conveniently failed to disclose to the United States Patent and Trademark Office the very activities that they now claim are prior art to the '064 patent.

bald assertions are simply not enough to overcome Rocep's Motion for Summary Judgment of Infringement.

### C. Defendants' Defense is Premised Entirely on Tilt Valve

The Defendants repeatedly allege that there is no infringement under Rocep's claim construction. However, other than a misleading argument related to the tilt valve, which is addressed further on in this Reply, the Defendants do not dispute that the Accused Product includes all the other elements of claims 1, 2 and 6 in the '064 patent. The Defendants' attack on the figures and photographs attempt to create issues with respect to the evidence presented. However, the figures and photographs do nothing more than identify the physical features of the Accused Product that the Court can clearly see are present (even by referencing the sample previously submitted by the Defendants). The Defendants do not provide any evidence or testimony that the Accused Products are missing any of the elements of claims 1, 2 and 6 as interpreted by Rocep.

### D. Defendants Concoct a Baseless Dispute Regarding the Claim Element "Nozzle Assembly Sealingly Engageable with the Hinge Assembly"

The Defendants continue to present different positions on the term "sealingly engageable." In one portion of Defendants' Answering Brief, *i.e.*, in their assertion that the claims of the '064 Patent are invalid, the Defendants claim to understand Rocep's interpretation of the claim element "nozzle assembly sealingly engageable with the hinge assembly" such that they can base their argument that the claim is invalid. However, in another portion of the same brief, *i.e.*, in their discussion of the "sealingly engageable" claim element, the Defendants assert that the claim element is meaningless. In other words, the Defendants conveniently understand Rocep's interpretation when they want to show invalidity, but equally conveniently find that they

do not understand the *same* claim element in order to suggest that there is a factual "dispute" that will overcome Rocep's summary judgment motion. Yet, in the end, Defendants do not present a single shred of evidence to counter that the Accused Products meet the "sealingly engageable" element as that term is interpreted by Rocep. Simply put, if the Court adopts Rocep's interpretation, then the sealingly engageable element of the claim is met since no facts have been presented that the Accused Products lack that feature.[4]

Thus, there is no *true* factual dispute with regard to the "sealingly engageable" claim element.

### E.     There is Adequate Support for Rocep's Infringement Analysis Without the Figures and Photographs

The figures presented in Exhibit D of Rocep's Opening Brief are a fair and accurate representation of the Accused Products. The intent of the figures was to assist the Court in understanding the features and operation of the Accused Device. As noted above, the features and the operation of the Accused Device are readily discernable by the Court's review of the sample product that the Defendant's produced. In addition, the Court can readily see by review of the sample provided that the figures accurately represent the product. Nothing about those figures is "manufactured."

Even if the Court were to discount the figures, Rocep's infringement analysis is still meritorious. In fact, Rocep does not, as the Defendants wrongly allege, "rely" on the figures in presenting its infringement analysis. Instead, the figures were provided merely to assist the

---

[4] Interestingly, the Defendants now try to argue in their brief that there is a dispute as to the term "seal". Since that is a claim interpretation issue, the Defendants should have raised that in their contentions on claim construction. They never did. Thus, the Defendants' argument is simply a manufactured issue for purposes of creating a "dispute". More smoke.

Court in the same way that the empty container provided by the Defendants was provided to assist the Court.

The Defendants try desperately to argue that the figures are somehow different, but fail to identify any feature that differs. Hence, for all the hand waving done by the Defendants, the fact remains that the features shown in the figures are all present in the product. Bernard Frutin testified to that. [Opening Brief, Exhibit F] Furthermore, the Defendants somehow conclude that the Declaration of Bernard Frutin should be discounted because it is based on the figures. This is incorrect. Bernard Frutin testified that each and every element of claims 1, 2 and 6 is present in the Accused Products. The figures were used simply to illustrate that testimony. The Defendants have not attempted in their Answer to contradict the testimony of Mr. Frutin, nor do they dispute anything Mr. Frutin says is accurate. Hence, infringement is established by the testimony of Bernard Frutin and the products themselves. The figures support the testimony of Mr. Frutin as to the structure of the Accused Products.

With regard to the photographs of Exhibit C of Rocep's Opening Brief, the photographs clearly show one of the Accused Products. Permatex's label is visible in the photos. Sufficient details are included in those photographs for the Court to identify the products as products sold by Permatex. The Defendants do not truly dispute that. They simply try to question when the products were obtained and from where.

The products shown in those photographs were purchased on June 13, 2006 from Midway Auto Supply, a distributor or customer of Permatex. The products were purchased in the United States by Robert Cannuscio. The products were received on June 15, 2006 and the photographs were taken shortly thereafter by Robert Cannuscio. This is all set out in the

accompanying Declaration of Robert Cannuscio. [Exhibit L]  The actual products that were used in the photographs will be brought to Court for the scheduled hearing on August 15, 2006.

Thus, there is no question that the product shown in the photographs is one of the Accused Products.  It was purchased approximately six weeks ago, meaning that these products are still on the market.

### F.     Only One Product Needs to Infringe for Summary Judgment to be Proper.

The Defendants' assertion that some of the Accused Products may not infringe the claims of the '064 Patent overlooks a basic premise of patent law.  That basic premise is set forth in 35 USC § 271(a), which states the following:

> Except as otherwise provided in this title, whoever without authorization makes, uses, offers to sell, or sells any patented invention, with the United States…during the term of the patent therefore, infringes the patent.

35 USC § 271(a).  Under this statute, any unauthorized use of a patented invention is an infringement.  That is, infringement is not a matter of degree.  *See Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1352-53 (Fed. Cir. 2000) ("Since its inception, this court has not tolerated the notion that a little infringement -- de minimis infringement -- is acceptable infringement or not infringement at all.")  Whether one product infringes or one hundred products infringe does not matter for purposes of summary judgment on infringement.  The amount of the infringement (*i.e.*, the number of infringing products) is an accounting to be addressed as part of damages.

The Defendants' admit that the Accused Products have used only two different types of valves - a Clayton valve and a "Hug II" type valve.  The Defendants also admit that, until December 1, 2005, the Powerbead cans (other than the Powerbead Right Stuff cans) used the Clayton valve. [Defendants' Answering Brief, Exhibit 1 to the Declaration of Stephen Chin,

Ultramotive's Response to Interrogatories Nos. 1-13, page 5] Since the photographs show a non-Right Stuff Powerbead can, the can <u>must</u> have either a Hug II valve or a Clayton valve in it. Regardless of the whether the can contains Hug II valve or a Clayton valve, as shown in the photographs, the sealant dispenses when the valve is titled. Therefore, whatever valve is in the can is a tilt valve.

Accordingly, regardless of the purported issues raised by the Defendants, their own testimony establishes that the product shown includes a tilt valve, regardless of the "version" of valve inside.

Defendants argue strenuously that the Court should not pay attention to what is shown in the photographs or the testimony presented since the Defendants never intended that their valve would tilt. Specifically, the Defendants assert that because the "proprietary valves" (Hug II valves) are really *intended* to dispense when displaced axially, the Accused Products having the "proprietary valves" cannot infringe the claims of the '064 Patent. To support this proposition, the Defendants cite a quotation that they assert is from *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995). Interestingly, as noted below, the quotation from *High Tech Med.*, when read in its context, does not support the Defendants' proposition.

> But a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim. *See Hap Corp. v. Heyman Mfg. Co.*, 311 F.2d 839, 843, 135 U.S.P.Q. (BNA) 285, 288 (1st Cir. 1962) ("The question is not what [a device] might have been made to do, but what it was intended to do and did do…. That a device could have been made to do something else does not of itself establish infringement.") *cert denied*, 373 U.S. 903, 10 L. Ed. 2d 198, 83 S. Ct. 1290 (1963).

The question in *High Tech Med.* was whether a claim can be infringed by a device that had to be physically altered (*i.e.*, removal of a set of screws) in order to meet a claim limitation. The court found the fact that the device could be altered to meet the claim limitation was not enough to find infringement. Unlike the device *High Tech Med.*, the Accused Products do *not* have to be physically altered for them to operate in a manner that meets the claim limitation of a tilt valve. The Accused Products have a tilt valve, and the tilt valve can be tilted by anyone using the product. There is no change that needs to be made to allow it to tilt.

The issues in this case are more akin to the product in *Intel Corp. v. United States Int'l Trade* Comm'n, 946 F.2d 821 (Fed. Cir. 1991).[5] The device in *Intel Corp.* was an integrated circuit memory device. The question was whether the device was programmable in a certain manner. As summarized by the *High Tech Med.* court, the *Intel Corp.* court found that:

> The accused device, although not specifically designed or sold to operate in that manner, could be programmed to do so; that is, it was 'programmable' to operate in the designated mode. The claim at issue in *Intel* therefore can read on the accused device, as made and sold.

*High Tech Med.*, 49 F.3d at 1556-1556. The same analysis can be performed with the Accused Products. That is, the Accused Products, although allegedly not specifically designed or intended (at least from the Defendants' perspective) to operate in a tilting manner, can be operated in that way, and there is nothing to stop someone from doing so. The claims at issue, therefore, can read on the accused device, as made and sold.

---

[5] Somewhat surprisingly, the Defendants failed to mention the *Intel* case although it was discussed in *High Tech Med.* in the paragraph immediately following the quoted passage the Defendants used in their Answering Brief.

Furthermore, the Defendants misstate the facts in their discussion regarding the multiple product lines. The Defendants assert that its "proprietary valves" have three design elements that make the valve suitable for axial displacement, but not for tilting. The Defendants overstate the effect of these elements. None of the elements, alone or in combination, prevents the valve from dispensing when tilted. Furthermore, no where in the arguments presented or the Declaration of Mr. Scheindel do the Defendants state or provide any evidence that the Hug II valve won't tilt and dispense product. On the contrary, Mr. Scheindel states that the smaller button sizes "makes tilting of the valve more difficult". [Defendants' Answering Brief, Scheindel Declaration ¶ 6.] This is not evidence that it won't tilt. Instead, it is an admission that it can tilt. Similarly, Mr. Scheindel's "wiggle room" and "boot" comments do not state that the valve cannot tilt and dispense product.

As further support that the Accused Products infringe, Exhibit M includes photographs showing a PowerBead Right Stuff can, which is made by Ultramotive and sold by Permatex. [Exhibit L; Declaration of Robert Cannuscio, ¶ 5-6]. As shown in the photographs, the can dispenses product when the nozzle (and, thus, the valve) is tilted. [Exhibit L; Declaration of Robert Cannuscio, ¶ 6] The Defendants have admitted that this product includes the Hug II valve and contend it is not a tilt valve. The photographs establish otherwise. Hence, these photographs counter the assertion by the Defendants that the Hug II valve does not dispense product when tilted.

Turning briefly to the products that do not include the "proprietary" Hug II valve, the Court will note that the Defendants have not presented any arguments or evidence that the valve used in those products (*i.e.*, the Clayton valve) does not tilt and dispense product. Hence, those products which were admittedly sold prior to December 1, 2005 include a tilt valve.

Accordingly, the arguments presented by the Defendants do not raise any factual dispute that the Accused Products include valves which are tilt valves under Rocep's interpretation. On the contrary, as discussed above, the Defendants have not presented any evidence or even attempted to argue that the Accused Products that include a Clayton valve have a tilt valve. Also, the Defendants arguments with respect to is new Hug II valve also fail to provide any evidence that those valves are not tilt valves. The photographs show that they dispense when tilted. Rocep intends to bring samples of various PowerBead cans to the hearing on August 15, 2006 for the Court to consider.

### G. Defendants' Allegations That Rocep is Trying to "Run the Defendants Out of Business" Are Absurd

Defendants insinuate that Rocep has some sort of vendetta against the Defendants, which, they allege, is evidenced by Rocep's attempt to "bully" the Defendants out of business. This is simply absurd. Rocep has a valid and enforceable patent that, as supported by the facts and the law, is infringed by the Defendants. Rocep is not "bullying" the Defendants. Rather, Rocep is merely asserting its rights in the '064 Patent; rights granted to them by the United States Patent and Trademark Office ("USPTO") after the USPTO properly examined Rocep's patent application and granted the '064 Patent.

Defendants attempt to pull at the Court's heartstrings by asserting that they are being bullied into incurring more litigation-related costs to defend themselves. This is farcical. The Defendants are where they are because of their own actions. The Defendants manufactured and sold products that infringe the '064 Patent. Even after Rocep filed the complaint in this action, the Defendants continued to manufacture and sell the same products.

- 12 -

## III. CONCLUSION

For the reasons above, the Defendants' Answering Brief fails to provide sufficient evidence to overcome Rocep's motion for summary judgment of infringement. Therefore, the Court should grant Rocep's motion and deny Defendants' motion for summary judgment of non-infringement.

                    Respectfully submitted,

                    ROCEP LUSOL HOLDINGS LIMITED

Date: August 4, 2006    BY:   /s/ David P. Primack
                                                    DAVID P. PRIMACK (#4449)
                                                    Drinker Biddle & Reath LLP
                                                    1100 North Market Street, Suite 1000
                                                    Wilmington, DE 19801-1254
                                                    Tel: 302-467-4224
                                                    Fax: 302-467-4201

                                                    ROBERT E. CANNUSCIO
                                                    Drinker Biddle & Reath LLP
                                                    One Logan Square, 18th & Cherry Streets
                                                    Philadelphia, PA 19103-6996
                                                    Tel: (215) 988-3303
                                                    Fax: (215) 988-2757

                                                    Attorneys for
                                                    ROCEP LUSOL HOLDINGS LIMITED