IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCEP LUSOL HOLDINGS LIMITED, )
)
    Plaintiff/Counterclaim Defendant, )
)
v. ) Civil Action No. 05-141-KAJ
)
PERMATEX, INC., and ULTRAMOTIVE )
CORPORATION, )
)
    Defendants/Counterclaimants. )

## MEMORANDUM OPINION

---

David P. Primack, Esq., Drinker Biddle & Reath LLP, 1100 North Market Street, Suite 1000, Wilmington, Delaware 19801; Counsel for Plaintiff.
    Of Counsel: Robert E. Cannuscio, Esq., Drinker Biddle & Reath LLP, One Logan Square, 18th and Cherry Streets, Philadelphia, PA 19103.

John G. Harris, Esq., Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801; Counsel for Defendants.
    Of Counsel: Lloyd McAulay, Esq., Stephen Chin, Esq., Reed Smith LLP, 599 Lexington Avenue, New York, NY 10022.

---

January 19, 2007
Wilmington, Delaware


JORDAN, Circuit Judge

I. **INTRODUCTION**

This is a patent infringement case. Plaintiff Rocep Lusol Holdings Limited ("Rocep") alleges that Defendants, Permatex, Inc. and Ultramotive Corporation (collectively, "Defendants"), infringe U.S. Patent No. 6,685,064 (issued Feb. 3, 2004) (the "'064 patent"). (Docket Item ["D.I."] 1 at ¶¶ 11, 13.) Before me are the parties' requests that, pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), I construe the disputed claim language of the '064 patent. Also before me are four motions: Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 48), Defendants' Motion for Summary Judgment of Invalidity (D.I. 51), Rocep's Motion for Summary Judgment of Infringement (D.I. 55), and Rocep's Motion to Adopt Plaintiff's Proposed Claim Construction (D.I. 57). The parties have fully briefed and argued their positions. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

For the reasons that follow, I will grant Defendant's Motion for Summary Judgment of Invalidity (D.I. 51). Because this motion is case dispositive and requires the construction of only one of the disputed terms, I will construe only that term. I also will deny Rocep's Motion to Adopt Plaintiff's Proposed Claim Construction (D.I. 57) as moot. Additionally, I will deny as moot both Rocep's and Defendants' Motions for Summary Judgment on Infringement (D.I. 48, 55).

---

[1] Sitting by designation.

## II.    BACKGROUND

### A.    Procedural Background

Rocep is the owner, by assignment, of the '064 patent. (*See* '064 patent, attached to D.I. 1 as Ex. 1, at 1.) It filed its complaint for patent infringement on March 10, 2005. (D.I. 1.) Specifically, Rocep accuses Defendants of infringing claims 1, 2, and 6 of the '064 patent. (D.I. 49 at 1; D.I. 56 at 1.) In their answer to the complaint, Defendants denied infringement and raised the affirmative defense of patent invalidity. (D.I. 7 at 2, ¶¶ 11-15.) Defendants also asserted counterclaims seeking declaratory judgment of invalidity and non-infringement of the '064 patent. (*Id.* at 4-5, ¶¶ 33, 35.)

### B.    The Disclosed Technology

The '064 patent is directed to "a dispensing apparatus for dispensing a product from a container." ('064 patent at 1:23-25.) According to the patent, earlier dispensing apparatuses suffered from several disadvantages. (*Id.* at 1:13-19.) For example, they called for expensive components and required a valve mechanism that was comprised of a large number of separate parts. (*Id.*) Therefore, the goal of the dispensing apparatus claimed in the '064 patent was to address at least one of those problems. (*Id.* at 1:20-22.) Claim 1 is the only independent claim of the '064 patent. It reads as follows:

> A dispensing apparatus for dispensing a product from a container, said apparatus comprising:
>     a container;
>     a product chamber within the container;
>     a tilt valve adjacent to the product chamber and having a valve
>         stem provided with an external thread;
>     a hinge assembly attached to the container;

>   a lever hingedly attached to the hinge assembly and comprising a
>       bearing portion; and
>   a nozzle assembly sealingly engageable with the hinge assembly
>       and provided with an internal thread engaged with the
>       external thread of the valve stem,
>   the nozzle assembly being rotatable relative to the hinge assembly
>       and the lever between open and closed positions of said
>       nozzle assembly and including an actuator portion provided
>       with a surface which cooperates with the lever bearing
>       portion such that in the open position of said nozzle
>       assembly operation of the lever causes movement of the
>       actuator portion to open the valve and permit flow of the
>       product out of the apparatus.

(*Id.* at 6:53-7:6.) Claims 2 and 6, which are also asserted by Rocep, both depend from claim 1. (*Id.* at 7:7-9, 8:4-6.) Claim 2 covers "[a] dispensing apparatus according to claim 1 further comprising means for urging said product from said product chamber." (*Id.* at 7:7-9.) Claim 6 is for "[a] dispensing apparatus according to claim 1 wherein said lever comprises two lever bearing portions arranged at opposite sides of said valve." (*Id.* at 8:4-6.)

### C.  The Asserted Prior Art

Defendants assert that the '064 patent is invalid, arguing that every element of asserted claims 1, 2, and 6 is disclosed by an International Application published under the Patent Cooperation Treaty, Publication No. WO 99/18010 (the "'010 PCT publication"). (D.I. 52 at 13-14.) The '010 PCT publication was published on April 15, 1999, and relates to a dispensing apparatus particularly for dispensing viscous materials. (D.I. 72, Ex. A ('010 PCT publication) at A-1, A-3.) The inventor named in the '010 PCT publication, Bernard Frutin, is also the inventor of the '064 patent, as well as being the co-founder, Chairman, and Chief Executive of Rocep. (*See* D.I. 62, Ex. F

3

(Affidavit of Bernard Frutin) at ¶ 1).) There is no dispute that the '010 PCT publication qualifies under 35 U.S.C. § 102(b) as prior art for the '064 patent, which claims priority to a PCT application filed on December 22, 2000. (See '064 patent at 1; D.I. 70 at 6 (Rocep's Answering Brief to Defendants' Motion for Summary Judgment of Invalidity, stating that "the '010 PCT publication can be considered a prior art reference").)

## III. LEGAL STANDARDS

### A. Claim Construction

Patent claims are construed as a matter of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (en banc). "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). That ordinary meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.

To determine the ordinary meaning, the court should review "the same resources as would" the person of ordinary skill in the art. *Multiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). Those resources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. Both "the context in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question" are useful for understanding the ordinary meaning. *Id.*

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). In short, the claims "must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979. Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

On occasion, "the specification may reveal a special definition given to a claim term ... that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). The specification may also "reveal an intentional disclaimer, or disavowal, of claim scope by the inventor ... [, which] is regarded as dispositive." *Id.* (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001)).

The court "should also consider the patent's prosecution history." *Markman*, 52 F.3d at 980. "Like the specification, the prosecution history provides evidence of how the [Patent and Trademark Office] and the inventor understood the patent." *Phillips*,

415 F.3d at 1317 (citing *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)).

The court may also rely on extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. In particular, "dictionaries, and especially technical dictionaries, ... have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology." *Phillips*, 415 F.3d at 1318 (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002)). However, extrinsic evidence is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004)).

During claim construction, "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Phillips*, 415 F.3d at 1324.

**B.   Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a

genuine issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

  **C. Validity**

  When a party challenges a patent's validity, the starting point for analyzing that challenge is the statutory presumption of validity. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid."). Accordingly, "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* Invalidity must be shown by clear and convincing evidence. *Robotic Vision Sys. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999). This presumption of validity is never weakened, and the burden of proving invalidity does not shift from the party asserting invalidity.

*Imperial Chem. Indus., PLC v. Danbury Pharmacal, Inc.*, 745 F. Supp. 998, 1004 (D. Del. 1990) (citing *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574-75 (Fed. Cir. 1984) (other citations omitted)).

## IV.   DISCUSSION

### A.   Construction of the "Tilt Valve" Limitation

The parties' dispute over the term "tilt valve," and their arguments in their claim construction briefing, center on whether a "tilt valve" can be opened only by tilting, or whether it can also be opened by axial displacement. The '064 patent states that "[t]ilt valves are generally known in dispensing apparatus [sic] and operate by tilting of a hollow central stem which is resiliently held on a mounting cup by a rubber grommet." ('064 patent at 1:45-48.) Rocep argues that a tilt valve can be opened by moving the valve stem in either of two ways. (D.I. 58 at 7.) Specifically, Rocep asserts that "tilt valve" should be construed to mean "a valve that, when not otherwise constrained, opens when a portion of the valve (the valve stem) is tilted or displaced axially relative to a seal." (*Id.*) Defendants, on the other hand, contend that a tilt valve can be opened only by tilting. (D.I. 53 at 12.) Accordingly, Defendants ask that "tilt valve" be construed to mean "a conventional off-the-shelf valve as generally known and widely used in dispensing apparatuses in which the valve is designed to be opened by tilting a hollow stem of the valve which is resiliently held on a container mounting cup by a rubber grommet." (*Id.*)

The parties thus agree at least that a tilt valve can be opened by tilting. Whether such a valve can also be opened by axial displacement goes to the parties' dispute over

8

whether Defendants' accused products infringe the '064 patent, not to whether the '010 PCT publication discloses a tilt valve.

The '010 PCT publication mentions a "tilt valve" in only one passage, which states, in relevant part:

> It should be noted that the boss portion 224 is only one of many possible fittings for the top piece 226. The top piece 226 is a standard open top cone and may, in other embodiments, have other valve assemblies fitted therein. For example, a standard aerosol valve such as a spray valve or tilt valve (for dispensing cream, etc) may be fitted. It should also be noted that the upper profile of the piston assembly may require modification to accommodate components of such valves which protrude into the body of the can. This may be achieved using the hollow stem of the secondary (uppermost) piston to make room for the valve components when the piston assembly is in its uppermost position.

(D.I. 72, Ex. A at A-23.)

Rocep asserts, *see infra* at 11-13, that the use of the term "tilt valve" in the '010 PCT publication is to help define the type of "top cone" to be used with the valve disclosed in that publication.[2] (D.I. 70 at 9.) That argument does not suggest that "tilt valve," as the term is used in the '010 PCT publication, means something different than it does in the '064 patent. However, even if one were to interpret Rocep's argument to mean that "tilt valve," as used in the '064 patent, somehow means something different than the same words in the '010 PCT publication, the dispositive rejoinder is that no one has directed my attention to any evidence in the record indicating any difference.

---

[2] According to Rocep, "the reference to the tilt valve was for defining the type of cone (container) that the inventor considered to be useful with his dispenser. That is, he was defining the type of cone that could be used as the kind that is sometimes used with spray or tilt valves." (D.I. 70 at 9.)

9

Nothing in the foregoing passage from the '010 PCT publication suggests a meaning for "tilt valve" that is other than the meaning conveyed in the '064 patent.

I will therefore construe the term "tilt valve," for purposes of addressing the Defendants' invalidity motion, as meaning the same thing in the '064 patent and in the '010 PCT publication, and covering "a valve that can operate at least by tilting."[3]

### B.  Defendants' Motion for Summary Judgment of Invalidity

Defendants assert that the '064 patent is invalid, because every element of asserted claims 1, 2, and 6 is disclosed by the '010 PCT publication. (D.I. 52 at 13-14.) Rocep, on the other hand, argues that the '010 PCT publication does not disclose the tilt valve limitation of the asserted claims of the '064 patent. (D.I. 70 at 8-10.)

By its language in the passage cited above, *supra* at 9, the '010 PCT publication discloses the use of a tilt valve in an alternative embodiment of the invention in that publication. Not only does the '010 PCT publication state that a tilt valve can be used in "other embodiments" of the invention, it also describes modifications that may be made to the invention to accommodate either a tilt valve or a spray valve.[4] The publication,

---

[3] Were I addressing the summary judgment motions on infringement, I would feel the necessity to construe this term in a way that would address and resolve the "axial displacement" issue, which the foregoing construction does not attempt.

[4] The "tilt valve" limitation is the only limitation that Rocep argues is not present in the '010 PCT publication. In their Opening Brief in support of their Motion for Summary Judgment of Invalidity, Defendants asserted that all of the limitations of claims 1, 2, and 6 of the '064 patent were present in the '010 PCT publication. (D.I. 52 at 12-22.) In their Answering Brief, Rocep responded only by arguing that the tilt valve limitation of claim 1 of the '064 patent was not present in the '010 PCT publication. (D.I. 70 at 8-10.) Thus, Rocep has conceded that all of the other elements of claims 1, 2, and 6 are present in the '010 PCT publication.

on its face, is clear and convincing evidence that it discloses the use of a tilt valve as an alternative embodiment.

Rocep, however, argues that this passage actually describes only the kind of cap to be used as the "top piece." (D.I. 70 at 8-10.) In support of its argument, Rocep cites the testimony of the inventor of both the '064 patent and the '010 PCT publication, Mr. Frutin. Frutin testified at his deposition that he did not think that the above passage disclosed the use of a tilt valve. (D.I. 72, Ex. C at C-20, lns. 17-19.) When asked why, he testified:

> Because it's completely contrary to the whole design. I think what was meant there was that the standard cone that he has described, which is the top portion of an aerosol, which would normally have any kind of valve in it could be used. And I think that reference is to spray valves, because spray valve is nonsense. There is no way you can put viscous materials into a spray valve for reasons we discussed before.
> Spray value [sic] with tilt valve was a way of identifying the standard cone, which is the standard in the industry top of an aerosol valve which would be put onto that can and then I could put my assembly onto it. I don't think it tells you that you can actually put a tilt action valve on [sic] an aerosol spray valve on this can. That's nonsense.

(D.I. 72, Ex. C at C-20, ln. 21 - C-21, ln. 12.)

Rocep asserts that Frutin's testimony creates a genuine issue of material fact as to whether a tilt valve is disclosed by the '010 PCT publication. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Frutin's self-serving explanation contradicts

11

the plain wording of the passage from the '010 PCT publication, and does not create a genuine issue of material fact.[5]

The proffered explanation completely ignores that the '010 PCT publication describes the use of a tilt valve as an alternative embodiment.[6]  Furthermore, Frutin does not account for modifications described in the '010 PCT publication that allow accommodation of a tilt valve or a spray valve.  Because Frutin's testimony is flatly inconsistent with the prior art reference itself, it is insufficient to create a genuine issue of fact for trial.  Cf. Invitrogen Corp. v. Clontech Laboratories, Inc., 429 F.3d 1052, 1080-81 (Fed. Cir. 2005) ("A party does not manufacture more than a merely colorable

---

[5] Although I do not base my decision in this case on an assessment of Frutin's credibility, the fact that Frutin is the inventor of both the '010 PCT publication and the '064 patent, as well as the co-founder, Chairman, and Chief Executive of Rocep may explain why his testimony is inconsistent with the unambiguous language of the '010 PCT publication.  Furthermore, although the present invalidity inquiry requires me to determine the meaning of a piece of prior art rather than the patent in suit, I note the parallel between this inquiry and claim construction.  Frutin's testimony about the meaning of the '010 PCT publication is akin to the testimony of an inventor regarding the construction of claim terms in suit.  "The testimony of an inventor ... concerning claim construction is ... entitled to little or no consideration. The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application[.]"  Bell & Howell Document Management Products Co. v. Altek Sys., 132 F.3d 701, 706 (Fed. Cir. 1997).

[6] Rocep argues that Federal Circuit law requires that "[t]o anticipate, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim[,]" citing Brown v. 3M, 265 F.3d 1349, 1351 (Fed. Cir. 2001).  Contrary to Rocep's arguments, Brown does not stand for that proposition.  Here, the '010 PCT publication clearly discloses the use of a tilt valve with the invention, and describes such use as an alternative embodiment of the invention.  Disclosing a tilt valve as an alternative embodiment rather than as the primary embodiment of the claim does not make the reference non-anticipatory.  In fact, it is reversible error to limit the scope of the prior art to a preferred embodiment.  See Ultradent Products, Inc. v. Life-Like Cosmetics, Inc., 127 F.3d 1065, 1068 (Fed. Cir. 1997) ("The district court thus erred by construing the scope of the Rosenthal disclosure as limited to the preferred embodiment.").

dispute simply by submitting an expert declaration asserting that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion."). No reasonable jury could rely on Frutin's explanation to conclude that a tilt valve is not disclosed by the '010 PCT publication.

Rocep also argues that the asserted claims of the '064 patent cannot be anticipated by the '010 PCT publication because that reference was before the examiner during the prosecution of the '064 patent. (D.I. 70 at 6-8.) That assertion, however, is contrary to established precedent. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1381-83 (Fed. Cir. 2005) (stating that a "patent may be found to be anticipated on the basis of a reference that had properly been before the patent examiner in the United States Patent and Trademark Office ("PTO") at the time of issuance[,]" and affirming District Court's grant of summary judgment of anticipation based on reference before the examiner); *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1287 (Fed. Cir. 2005) ("Under the appropriate standard, the Charrin prior art reference, which was before the examiner during prosecution of the '532 patent, clearly anticipates the asserted claims of the patents in suit.").

It is true that the burden on a party arguing anticipation is higher when the asserted reference was before the examiner during prosecution. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986) ("when the prior art before the court is the same as that before the PTO, the burden on the party asserting invalidity is more difficult to meet."). In this case, the existence of the '010 PCT publication is reflected in the prosecution history of the '064 patent by a single notation on a form entitled "Information Disclosure Citation," containing the number of the '010

PCT publication. (*See* '064 Prosecution History, D.I. 61, Ex. D at D-16.) The examiner initialed the Information Disclosure Citation form where the applicant disclosed the '010 PCT publication, but that is the only evidence that the '010 PCT publication was considered by the examiner. (*Id.* at D-16.) The examiner did not comment on the reference during prosecution of the patent. (*Id.*, Ex. D.) What, if anything, the examiner did to examine the '010 PCT publication is not clear from the prosecution history of the '064 patent. Even if the examiner read and considered the '010 PCT publication, however, I find that the plain language of the reference provides clear and convincing evidence that the reference disclosed the use of a tilt valve as an alternative embodiment of the invention set forth in the reference.

Therefore, there is clear and convincing evidence to support Defendants' assertion that the '010 PCT publication discloses every element of claim 1 of the '064 patent, and I conclude that Rocep has failed to raise a genuine issue of material fact regarding the anticipation of that claim. Claims 2 and 6 depend from claim 1, and Rocep has not disputed Defendants' argument that the additional elements in those claims are disclosed in the '010 PCT publication. I therefore conclude that claims 2 and 6 are also anticipated by the '010 PCT publication. Because no genuine issues of material fact remain, I will grant Defendants' Motion for Summary Judgment (D.I. 51) that claims 1, 2, and 6 of the '064 patent are invalid as anticipated by the '010 PCT publication.[7]

---

[7] Defendants also argue that the asserted claims of the '064 patent are invalid as indefinite under 35 U.S.C. § 112. (D.I. 52 at 22-24.) I decline to address that argument, since the asserted claims of the '064 patent are invalid as anticipated by the '010 PCT publication.

14

### C. Summary Judgment Motions on Infringement

Rocep and Defendants have cross moved for summary judgment on infringement (D.I. 48, 55). Since I will grant Defendants' Motion for Summary Judgment that the '064 patent is invalid as anticipated, I will deny both of those motions as moot.

## V. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment of Invalidity (D.I. 51) will be granted, and the other pending motions (D.I. 48, 55, 57) will be denied as moot. An appropriate order will follow.